Wachtler, J.
 

 For several years James Crawford was employed as a registered representative by Merrill Lynch, Pierce, Fenner & Smith, Inc. (hereinafter “ Merrill Lynch ”). In October of 1970, having left the firm, he brought an action in the Supreme Court, Onondaga County, to recover commissions allegedly earned by him during the period of his employment. The action was commenced by service of a summons and complaint on David R. Pierson, the manager of the Merrill Lynch office located at Syracuse.
 

 On October 29, 1970 the defendants moved to dismiss the action and compel arbitration before the New York Stock Exchange (hereinafter
 
 “
 
 the Exchange ”) which, it was claimed, was required by the terms of the “ plaintiff’s employment contract, signed by him on or about July 16, 1967.”
 

 While this motion was pending the plaintiff served Merrill Lynch with a
 
 “
 
 Notice of Intention to Arbitrate and Demand for Arbitration ” in which he stated: “ Named claimant, James A. Crawford Jr., a Party to an agreement dated on or about July 16, 1967, which agreement provides:
 
 ‘
 
 That any controversy . . . .shall be settled by arbitration ’ and, furthermore, by reason of David R. Pierson’s affidavit dated October 30,
 
 *295
 
 1970, in which he states that he believes that the 1 exclusive remedy is arbitration; ’ and per the request of the respondents, the claimant hereby demands arbitration thereunder.” The notice also recited the nature of the dispute the relief sought and
 
 ‘ ‘
 
 notified ’ ’ the defendants that unless they moved to stay arbitration within 10 days they would be
 
 ‘ ‘
 
 barred from putting in issue the making of the contract of arbitration, or the submission thereof or the failure to comply therewith.” The defendants were further notified “ that copies of our arbitration Agreement and of this Demand are being filed with the American Arbitration Association at its Syracuse Regional Office, with the request that it commence the administration of the arbitration.” This motion was sent by certified mail to the president of Merrill Lynch in New York City where it was received on November 25, 1970.
 

 Two days later the plaintiff submitted his papers in opposition to the defendants’ motion to compel arbitration before the Exchange, claiming that the arbitration agreement of July 16, 1967 was not enforceable because (1) it had never been signed by the defendants, (2) it terminated when the plaintiff left the employ of Merrill Lynch, (3) it did not require the plaintiff to arbitrate before the Exchange, and (4) the parties’ original expectation that arbitration before the Exchange would be expeditious could no longer be realized because of a current backlog of cases pending before that forum.
 

 On December 8, 1970 the Supreme Court granted defendants’ motion to dismiss the complaint and compel arbitration before the Exchange. The following day the defendants moved to vacate arbitration before the American Arbitration Association since the agreement, it was argued, called for arbitration before the Exchange. The plaintiff opposed the motion on the ground that the defendants’ failure to move to stay arbitration within 10 days barred them from claiming that the agreement designated a different arbitration forum. In February, 1971 the Supreme Court granted the motion and vacated arbitration before the American Arbitration Association.
 

 By a bare majority the Appellate Division reversed and denied both motions primarily on the ground that the defendants, having failed to move to stay arbitration within 10 days after receipt of the plaintiff’s notice, were in accordance with
 
 *296
 
 CPLR 7503 (subd. [c]) “ thereafter * * * precluded from objecting that a valid agreement was not made or has not been complied with ”. (41 A D 2d 112.)
 

 We agree that the notice satisfied the technical requirements of the statute “ specifying [as it did] the agreement pursuant to which arbitration is sought and the name and address of the party serving the notice * * * and stating that unless the party served applies to stay the arbitration within ten days after such service he shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with ” (CPLR 7503, subd. [e]). And, according to the statute, service “by * * * certified mail, return receipt requested ” was sufficient.
 

 But we cannot overlook the fact that the notice, demanding arbitration before the American Arbitration Association, also contained misleading statements suggesting that the plaintiff was merely joining in the defendants’ motion to compel arbitration before the Exchange. Nor can we disregard the peculiar fact that the notice was not served on the defendants in Syracuse, as the summons had been, but was sent instead to their headquarters in New York City, thus virtually depriving the defendants of a fair opportunity to respond within the short 10-day period then allowed by the statute.
 
 *
 
 Other courts encountering this practice have condemned it in terms equally applicable here: “.If this service is effective to bar contest to the arbitration, [a party who] did a nationwide business could be served anywhere, with the practical certainty that it be precluded from opposing arbitration. Such practice should not be countenanced, on the principle that service not designed to give notice cannot be grounds for a default ”.
 
 (Matter of Empire Mut. Ins. Co. [Levy],
 
 35 A D 2d 916; see, also,
 
 Matter of Allstate Ins. Co. [Kelley],
 
 35 A D 2d 778.) For both of these reasons the notice was a nullity (cf.
 
 Schafran & Finkel
 
 v.
 
 Lowenstein & Sons,
 
 280 N. Y. 164).
 

 We turn then to the question as to whether the defendants were entitled to an order compelling arbitration before the Exchange. By statute they have the right to compel arbitration (CPLR 7503, subd. [a]) “Where there is no substantial
 
 *297
 
 question whether a valid agreement was made or complied with, and the claim sought to be arbitrated is not barred by limitation under subdivision (b) of section 7502 The plaintiff continues the argument made below that there is no enforceable agreement to submit the controversy to arbitration before the Exchange at the insistence of either party. In considering this issue we must bear in mind that “ A written agreement to submit ány controversy thereafter arising or any existing controversy to arbitration is enforceable ” (CPLR 7501).
 

 In support of the motion to compel arbitration the defendants relied on a provision of the “ employment contract” — now conceded to be plaintiff’s application to the Hew York Stock Exchange seeking registered representative status — which states:
 
 “
 
 I agree that any controversy between me and any member or member organization or affiliate or subsidiary thereof arising out of my employment or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration, procedure prescribed in the Constitution and rules then obtaining of the Hew York Stock Exchange.”
 

 In opposition to the motion the plaintiff, who has never been a member of the Exchange, cited section 6 of article VTII of the Hew York Stock Exchange constitution: “ Hon-Member Controversies. Any controversy between a non-member and a member or allied member or member firm, or member corporation, arising out of the business of such member # * * shall, at the instance of such non-member, be submitted for arbitration as provided herein below.”
 

 This was the extent of the proof submitted to the trial court and appearing on the record at the Appellate Division when this case was originally argued there. The Appellate Division majority proceeded to interpret the terms of the application and the constitution, reaching the conclusion that the plaintiff, as a nonmember, had the right to seek arbitration before the Exchange but could not be compelled to do so. The dissenters took the position that any question concerning the interpretation of the arbitration agreement should be resolved by the arbitrators, but argued that if the court was privileged to decide the question the cited provisions should be read to bind the plaintiff to arbitrate the controversy before the Exchange.
 

 
 *298
 
 However when the case was argued ¡before our court, the defendants submitted copies of two rules of the Exchange, which eliminate the troublesome issues dividing the Appellate Division and conclusively resolve any doubt as to whether the plaintiff agreed to submit to arbitration before the Exchange any controversy arising out of his employment. Thus we have been informed that Exchange rule 347[b] states: “ Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these Rules.” The arbitration procedure itself is found in rule 481 which provides: “ "Where the parties to a controversy have previously entered into an agreement to arbitrate future disputes in accordance with the procedure of the Exchange, or a court has issued an order directing such an arbitration, proceedings may be instituted by either party filing with the Arbitration Director a concise statement of claim or controversy, together with a copy of the agreement providing for arbitration or court order and moving papers.”
 

 The plaintiff does not dispute the existence of these rules or the accuracy of the text, but argues instead that this court may not consider matters dehors the record. This of course is the “ general rule ”
 
 (Matter of Hayes,
 
 263 N. Y. 219, 221;
 
 Employers’ Liab. Assur. Corp.
 
 v.
 
 Daley,
 
 297 N. Y. 745, 747;
 
 Johnson
 
 v.
 
 Equitable Life Assur. Soc. of U. S.,
 
 16 N Y 2d 1067; see, also, Cohen and Karger, Powers of the New York Court of Appeals, § 181, p. 680).
 

 In the
 
 Johnson
 
 case, for example, a third-party complaint had been dismissed because the plaintiff had failed to prove that the defendant had ever done business in this State, and on appeal the plaintiff ‘Coffered for consideration by this court in the first instance transcripts of examinations before trial of [the] third-party defendant ”. We noted that “ [o]n their face these transcripts seem to suggest that third-party defendant had done some business ill New York ” but refused to consider them for the first time on appeal. Instead we directed
 
 *299
 
 that the appeal be withheld and the case remitted to the trial court since
 
 “
 
 [n]o opportunity to amplify by other proof or explain the total effect of the activities in New York has been afforded third-party defendant, and no-first instance evaluation of the tendered proof has been made by a court possessed of fact-finding powers. Therefore, this proffered proof may not be given first instance evaluation here ’ ’
 
 (Johnson
 
 v.
 
 Equitable Life Assur. Soc. of U. S., supra,
 
 at pp. 1068, 1069).
 

 This then is the established procedure, but if it were followed in this case it would prolong the appeal and accomplish little else. As indicated, the plaintiff does not deny the existence of these rules, or claim that the quoted text is inaccurate or incomplete. Thus our acceptance of them would not generate factual questions which must first be resolved by other courts. On the other hand our consideration of them at this time would finally conclude this protracted litigation and return the case, at last, to the arbitrators where it should have begun four years ago. Under these circumstances we believe a narrow exception to the general rule should be recognized; not in order to accommodate the litigants but rather to relieve the courts of an unnecessary burden and to give some impetus to the policy favoring speedy resolution of arbitrable controversies (see, e.g.,
 
 Matter of Weinrott [Carp],
 
 32 N Y 2d 190, 198).
 

 Finally the plaintiff argues that the arbitration clause in his Stock Exchange application should not be considered a “ written agreement ” between the parties, within the meaning of CPLR 7501, because it was never signed by Merrill Lynch. The statute it should be noted simply requires
 
 “
 
 A written agreement ” to arbitrate. There is no requirement that the writing be signed
 
 “
 
 so long as there is other proof that the parties actually agreed on it ”
 
 (Matter of Helen Whiting, Inc. [Trojan Textile Corp.],
 
 307 N. Y. 360, 368).
 

 In a recent case
 
 (Matter of Willard Alexander, Inc.
 
 [Glasser], 31 N Y 2d 270) we considered a problem very similar to the one now before us. There a booking agent “ licensed ” by the American Federation of Musicians obtained an arbitration award from the union’s international executive board requiring the plaintiff, a union member, to pay certain commissions. The booking contract which gave rise to the controversy did not
 
 *300
 
 contain an arbitration clause, but the union’s constitution and by-laws required that disputes
 
 “
 
 arising out of contracts between members of the union and booking agents should be arbitrated £ by the International Executive Board of [the AFM].’ ” Noting that the booking agent, in order to become ££ licensed ” by the union, agreed to abide by the union’s arbitration rules, and that the respondent being a union member was similarly bound as a matter of law, we concluded that
 
 “
 
 the mutual obligation of the parties * * * to observe the union’s arbitration provisions clearly constitutes, as between themselves, a
 
 1
 
 written agreement ’ to arbitrate this dispute within the meaning of CPLR 7501 ”
 
 (Matter of Willard Alexander, Inc.
 
 [Glasser],
 
 supra,
 
 at pp. 273, 274).
 

 The same principle applies here. The rules of the Exchange provide that any controversy between a registered representative and a member of the Exchange £ £ arising out of the employment or termination of employment of such registered representative by and with such member ” shall be settled by arbitration before the Exchange, at the instance of either party. The plaintiff agreed to abide by these rules when he applied to become a registered representative and the defendant, a member of the exchange, was, as a matter of law, bound to observe them. Thus between the parties there was a written agreement to submit the controversy to arbitration before the Exchange (CPLR 7501) and the defendants were entitled to the order requested, compelling the parties to arbitrate the matter before (hat forum (CPLR 7503, subd. [a]). However since that order would “operate to stay [the] .pending * * * action” the trial court had no occasion to grant the additional relief requested by the defendants, dismissing the complaint.
 

 Accordingly the order of the Appellate Division denying the motion to compel arbitration and dismiss the complaint should be modified to the extent of directing the parties to arbitrate before the New York Stock Exchange. Of course the action will be stayed 'by operation of CPLR 7503 (subd. [a]). The order of the Appellate Division denying the motion to vacate arbitration before the American Arbitration Association should be reversed and the motion granted.
 

 
 *301
 
 Chief Judge Bebitbl and Judges Cabbielli, Jokes, Rabik and Steveks concur; Judge Jasek taking no part.
 

 Order denying the motion to compel arbitration and dismiss the complaint modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.
 

 Order denying the motion to vacate the arbitration before the American Arbitration Association reversed, without costs, and the motion granted. Question certified, insofar as it is related to the denial of the motion to dismiss the complaint, answered in the affirmative.
 

 *
 

 The period has since been extended to 20 days (see L. 1973, ch. 1028).