**ROYAL AIR MAROC, Petitioner,**

v.

**SERVAIR, INC., Respondent.**

**No. 84 Civ. 7513 (RWS).**

United States District Court,
S.D. New York.

Feb. 7, 1985.

Surrey & Morse, New York City by Paul A. Koches, Surrey & Morse, Washington, D.C., for petitioner.

Fried, Frank, Harris, Shriver & Jacobson, New York City, for respondent; Richard M. Michaelson, Linda R. Brower, New York City, of counsel.

## OPINION

SWEET, District Judge.

Petitioner Royal Air Maroc ("RAM") and respondent Servair, Inc. ("Servair") have moved for relief with respect to Servair's effort to obtain arbitration, RAM to dismiss Servair's counterclaim seeking enforcement of arbitration and Servair to enforce such arbitration under the Federal Arbitration Act, 9 U.S.C. § 4. For the reasons stated below, Servair's motion to compel arbitration will be granted and RAM's motion to dismiss the Servair counterclaim will be denied. The proceeding will be dismissed with leave to reopen if necessary to enforce the arbitration award or to take any further action to compel arbitration.

**The Parties**

Servair is a Delaware corporation with its principal place of business in McLean, Virginia. Servair contracts with air carriers to provide a range of "on. the ground" aircraft cleaning and handling services at various airports throughout the country. Servair maintains a facility at New York's Kennedy Airport. RAM, the international airline of Morocco, is a Morocco corporation with its principal office in Casablanca, Morocco. RAM flies its planes into Kennedy Airport, among other places.

On March 10, 1982, Servair entered into a written Ground Handling Agreement with RAM which contained an arbitration clause (the "Agreement"). Under the terms of the Agreement, Servair agreed to provide

RAM with "on the ground" cleaning and handling services at Kennedy Airport through March 31, 1983. RAM admits that certain aspects of the agreement were extended beyond its initial termination on March 31, 1983, and that from April 1, 1983 until August 30, 1984, Servair rendered ground handling services to RAM. On August 30, 1984 RAM informed Servair that it was terminating the use of Servair's services.

### Prior Proceedings

By letter dated September 20, 1984, Servair demanded arbitration of the dispute pursuant to the arbitration agreement between the parties contained in the Agreement. RAM failed to comply with the terms of the arbitration agreement and, instead, commenced the above entitled proceeding in the Supreme Court of the State of New York, County of New York, to stay such arbitration. On October 18, 1984, Servair removed the proceedings to this court. By agreement of the parties, this court has deemed RAM's petition a complaint seeking to enjoin the arbitration demanded by Servair.

The RAM and Servair motions were heard and fully submitted on December 21, 1984, and neither side sought further discovery. The parties were not in dispute with respect to the facts, but of course urged opposite conclusions springing from those facts.

### The Facts

The Agreement consists of three documents: the Main Agreement, Annex A, and Annex B. The Main Agreement sets forth all of the terms and conditions under which Servair agreed to provide cleaning and handling services to RAM aircraft landing at Kennedy Airport. Annex A sets forth the specific description of the services to be rendered by Servair. Annex B provides for the unit charges for the services specified in Annex A. Although the Agreement was signed by Servair and sent to RAM for countersignature, consistent with RAM's usual practice, Servair did not receive a copy signed by RAM. However, there is no dispute concerning the applicability or execution of the Agreement as such.

Paragraph 11.2 provided: "Modification of, or additions to this Agreement or its Annexes must be approved in writing by the parties."

Paragraph 11.3 of the Main Agreement provided: "This Agreement may be cancelled provided the cause of such termination is due solely to the Handling Company's [Servair's] failure to maintain reasonable standards of performance ..." Also, in order to cancel under that provision, (i) RAM had to identify Servair's alleged substandard performance with reasonable particularity; (ii) if Servair failed to achieve RAM's standards within 30 days after notice then; (iii) RAM had the right to give Servair 60 days notice of cancellation of the Agreement.

Paragraph 11.4 of the Main Agreement permitted cancellation of some of the services described in Annex A. If either party wished to cancel "a portion of the assistance to be furnished [by Servair at Kennedy Airport]" sixty (60) days' previous notice to the other party was required.

Paragraph 9.1 of Article 9 of the Main Agreement provides, in relevant part, that:

Unless otherwise agreed, any difference or dispute arising from the interpretation or the implementation of the present agreement or relating to any rights or obligations herein contained shall be referred to arbitration by a single independent arbitrator whose decision shall be final and binding upon both parties.

Paragraph 9.3 provided: "The applicable law shall be the law of the State of New York."

No change occurred in the conduct of Servair and RAM at Kennedy Airport after March 31, 1983, the initial termination date of the Agreement. RAM continued to present its 747 and 707 aircraft landing at Kennedy Airport for cleaning and handling by Servair. RAM requested, accepted, and paid for the services specified in Annex A at the prices listed in Annex B. Servair proposed in letters dated April 8 and June

9, 1983 an 8% increase in the ground handling charges listed in Annex B, retroactive to April 1, 1983.

By letter dated June 10, 1983, RAM rejected Servair's retroactive 8% price increase proposal, but referred to "Paragraph 11.10 of our Basic Agreement," and asserted that Servair was obligated to give RAM 30 days advance notice of any "proposed price changes." In the absence of such a notice provision in the Agreement, Servair's representatives understood RAM's reference to "paragraph 11.10 of our Basic Agreement" to mean that RAM wished to amend the Agreement to include the 30 day notice provision contained in paragraph 11.10 of the printed form of a model ground handling agreement issued by the International Air Transport Association ("IATA").

By letter dated July 6, 1983, Servair modified its April 8, and June 9, 1983 letters. Servair proposed that its 8% price increase in ground handling charges become effective on May 1, 1983 instead of retroactive to April 1, 1983, thereby complying with the requested 30-day notice requirement.

Negotiations on the price of the services to be provided were finally concluded at a luncheon meeting in November, 1983 attended by Zeroul Marchoudi ("Marchoudi"), RAM's representative, John A. Mangano ("Mangano") and Thomas J. Cason ("Cason"), Servair's representatives. It was agreed that the ground handling charges set forth in Annex B would be increased by 6% in each of the years 1984 through 1986, inclusive. Marchoudi stated in response to Cason's inquiry that he had the authority to act on behalf of RAM. By letter dated November 11, 1983, Mangano confirmed the modifications to Annex B which the parties had orally agreed to at the luncheon meeting.

Servair serviced RAM's aircraft throughout 1983 without any increase, and serviced RAM's aircraft from January 1, 1984 through August 30, 1984 at the 6% increase agreed upon at the luncheon meeting in November, 1983. On or about February 28, 1984 Servair attempted to memorialize the price increase described in Mangano's November 11, 1983 letter by preparing, signing and forwarding to RAM a document entitled "Amendment No. 1," with an effective date of January 1, 1984. Amendment No. 1 addressed paragraph 11.3 of the Main Agreement (the period during which the price increase would be in effect), and Articles 1 and 3 of Annex B (the amount of the additional charges). Servair received no copy of Amendment No. 1 signed by RAM nor any acknowledgement or rejection of the Amendment. RAM continued utilizing and paying for Servair's services at Kennedy Airport, as invoiced, at the prices agreed upon in November, 1983, anticipating the agreed upon term. Invoices were submitted during this period and checks were received from RAM in an amount totalling $205,789.02.

Paragraph 2.3 of Article 2 of Annex B provided that Servair was to present to RAM "Acceptance Tickets" reflecting the type and quantity of daily ground handling services provided to RAM aircraft. Acceptance Tickets were prepared weekly by Servair after January 1, 1984, stating, "as per contract charges." A monthly invoice was prepared and sent to RAM. For each month of service, RAM paid the amount "as per the contract charges." After January, 1984, however, RAM was billed—and it paid for—every service at a rate increased by 6%.

By letter of May 23, 1984, Marchoudi advised that RAM was "herewith cancelling, with immediate effect, the contract between Royal Air Maroc and Servair regarding the Ramp Handling and cleaning" of its aircraft. Marchoudi had received a telex requesting that he seek a reduction in the 60-day notice requirement of Article 11 of the Main Agreement.

By letter dated May 29, 1984, Servair offered to meet with a RAM representative to discuss the matter referred to in paragraph 11.3 of the Main Agreement which permitted cancellation "... only due to a failure to maintain a reasonable service," and asserted that RAM's action was in breach of the contract governing the par-

ties' relationship which the parties had extended until at least the end of 1986. A copy of Paragraph 11.3 of Article 11 of the Main Agreement was enclosed with the letter.

In a telephone conversation, Marchoudi stated that, rather than immediately cancel its contract with Servair, RAM was giving the 60-days' notice required under Article 11 of the Main Agreement, and that the purported cancellation would become effective on July 31, 1984. Servair sent a telex to RAM that day reiterating Servair's position that cancellation was inappropriate but offering to provide the services under a subcontract with Lufthansa.

Thereafter, Servair's Associate Group Counsel advised RAM by letter dated July 13, 1984 that RAM's letter of May 23, 1984 was in breach of the Agreement. In response, by letter dated July 27, 1984, RAM's counsel stated that:

The only valid contract between your client Servair, Inc. and Royal Air Maroc was a one-year Ground Handling Agreement effective as of April 1, 1982. While Servair requested a new three-year contract upon its expiration, Royal Air Maroc never agreed to the new contract, a decision based in part on the unacceptability of the proposed three-year term. It is our position that Servair's services since April 1, 1983 have been pursuant to an implied extension of the original contract, a contract which Royal Air Maroc is entitled to terminate at will, and without reference to the termination provisions of either contract, which provisions contemplate termination during the term of an unexpired contract.

On August 2, 1984 RAM's counsel offered to pay for services "on the same basis as hitherto." On August 30, 1984 RAM sent a mailgram terminating its use of Servair's services.

**The Agreement to Arbitrate**

■ RAM and Servair are substantial entities daily performing important functions in a complex industry governed by international agreements and regulations, federal regulations, and commercial arrangements. This industry is no longer a barn-storming operation. Under *Washington Heights v. District 1199*, 748 F.2d 105 (2d Cir.1984), the court's function must be to determine the intent of the parties with respect to their underlying agreements, including arbitration, prior to the termination of their relationship on August 30, last year. In view of the facts stated above, the terms and all the provisions of the Agreement were extended by Amendment No. 1, which simply altered the prices and duration of the Agreement.

■ The failure of RAM to countersign Amendment No. 1 in no way alters its intent which was exemplified by the November 1983 negotiations, the confirming correspondence, Amendment No. 1 itself, and the absence of any sign of protest by RAM to the expressed understanding of Servair. To deny Servair its bargain because of its failure to obtain a signed agreement from a foreign entity when the entity was in fact satisfying the terms of Amendment No. 1 and the underlying Agreement would be to exalt form over substance and to deny the realities of the complexities of the carriage of goods and passenger by air.

While in other types of transactions our Court of Appeals has insisted on the contract formalities, in *Washington Heights v. District 1199, supra,* the Court, through the opinion of its Chief, reversed this lower court and remanded for further proceedings, holding that the absence of a formally executed agreement to arbitrate did not preclude the enforcement of arbitration under an expired agreement if continued arbitration was the intent of the parties.

Here, of course, there was no cause for arbitration prior to termination as there had been in *Washington Heights*, where the parties had arbitrated without a formal agreement. However, by stating the alternatives available on remand, the Court fully demonstrated the victory of intent over form.

As already indicated, the formalism of Amendment No. 1 was alone sufficient to

renew the Agreement in its totality. Further, the correspondence and performance of both Servair and RAM establishes their intent. As is occasionally stated to non-professional factfinders, the adage "actions speak louder than words" applies.

RAM relies on *Korody Marine Corp. v. Minerals & Chemicals Phillipp Corp.*, 300 F.2d 124 (2d Cir.1962) for the proposition that a continued course of dealing without more cannot serve to extend an arbitration provision in a previous contract. In *Korody*, however, the court characterized the continued relationship between the parties as "some sort of informal arrangement." *Id.* at 125. Here, of course, there is more, namely, Amendment No. 1. In addition, were it necessary to the decision here, the particulars of the continued course of dealing between Servair an RAM were such as to extend the term of the 1982 agreement.

RAM also relies on *Waldron v. Goddess*, 61 N.Y.2d 181, 473 N.Y.S.2d 136, 461 N.E.2d 273 (Ct.App.1984) for the general proposition that an arbitration clause cannot be extended by course of conduct. RAM seeks to draw too much from *Waldron*, for *Waldron* is distinguishable from the facts of this case. In *Waldron*, subsequent to expiration of the initial contract there was an express rejection of an offer to renew a written contract. Consequently, the court was unwilling to override this express rejection and to find the earlier, expired arbitration clause binding. Here, in contrast to the rejection of the written contract, I have found a renewal and extension of the Agreement. The concern of the *Waldron* court that a party might be required to arbitrate without having affirmatively demonstrated an intention to be bound by arbitration is therefore not relevant here.

### The Statute of Frauds

■ RAM seeks to invalidate any extension of the Agreement by invocation of the Statute of Frauds, N.Y.Gen.Oblig.Law § 5–701(a) (McKinney) (the "Statute"). The short answer to the contention is that Amendment No. 1 satisfies the elements of the Statute. Under New York law, an integration of several documents satisfies the writing requirement of the statute where they refer to the same subject matter, together contain all the material terms, and at least one of which is signed or prepared by the party to be charged. *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 110 N.E.2d 551 (1953); *Biggle v. Harper & Row Publishers, Inc.*, 675 F.2d 107 (6th Cir.1982) (applying New York law); *Marcraft Recreation Corp. v. Frances Devlin Co.*, 506 F.Supp. 1081, 1085 (S.D.N.Y.1981); *Great Destinations, Inc. v. Transportes Aereos Portugeses S.A. R.L.*, 460 F.Supp. 1160 (S.D.N.Y.1978).

In addition, RAM's telex of May 1984, its letter dated May 23, 1984, and its cancelled checks in payment of Servair invoices for the 17-month period subsequent to March 31, 1983 all are further signed documents which acknowledge the continued existence of the terms of the Agreement in addition to Amendment No. 1.

■ Finally, New York has carved out a special exception to its statute of frauds which estops a party from asserting the statute as a defense under circumstances similar to the instant case:

> Part performance that is clear, certain and definite in object and design as to be unequivocally referable to the agreement, and which will precipitate a fraud if the agreement is not enforced, removes the action from the defense of the statute of frauds.

*Marcraft Recreation Corp., supra*, 506 F.Supp. at 1085; *Rose v. Spa Realty Associates*, 42 N.Y.2d 388, 397 N.Y.S.2d 922, 366 N.E.2d 1279 (Ct.App.1977); *Marine Midland Bank v. Quality Exterior Corp.*, 92 A.D.2d 662, 460 N.Y.S.2d 159 (3d Dep't 1983).

■ For 17 months, Servair serviced RAM's aircraft pursuant to the terms of the Agreement, and Servair abandoned its attempt to obtain retroactive 8% price increase and only charged a 6% price increase commencing in 1984. RAM accepted the benefits of the agreement for a period that is far in excess of the six days

which was held sufficient as a matter of law in *Matter of Helen Whiting, Inc. v. Trojan Textile Corp.*, 307 N.Y. 360, 365, 121 N.E.2d 367 (Ct.App.1954). Part performance under the extended Agreement is sufficient to estop RAM from asserting the statute of frauds as a defense.

 Arbitration agreements are governed by CPLR § 7501, which requires only that the agreement to arbitrate be in writing and it does not require the signature of the party to be bound. N.Y.CPLR § 7501; *Crawford v. Merrill Lynch*, 35 N.Y.2d 291, 361 N.Y.S.2d 140, 146, 319 N.E.2d 408, 412 (1974). The cases clarify that the writing need not be signed by the party to be charged "so long as there is other proof that the parties actually agreed on it." *Matter of Helen Whiting, Inc., supra,* 307 N.Y. at 368, 121 N.E.2d 367; *Crawford, supra,* 361 N.Y.S.2d at 146, 319 N.E.2d at 412. Whether or not the termination by RAM was appropriate under the Agreement is a matter not before the court and presumably will be presented, among other things, to the arbitrators.

Finally, in the course of reviewing the Agreement I became aware for the first time that Servair was a subsidiary of Dynalectron Corporation ("Dynalectron"). For a relatively brief period in 1973 the firm of which I was a member represented Dynalectron in seeking to obtain certain rights at Kennedy Airport for the benefit of Servair, and I performed services for Dynalectron in that connection. The matter was unrelated to this dispute, and I have had no dealings with Dynalectron or Servair since that time. None of the persons that I now recall dealing with at that time are mentioned in any of the documents before me. It would ill serve the interests of justice to recuse myself at this time, given the fulsome submissions and arguments presented. Further, such recusal is not required under the authorities, *National Auto Brokers v. Gen. Motors Corp.*, 572 F.2d 953 (2d Cir.1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979). However, it is in my view appropriate that the findings include the facts just stated.

The motion to compel arbitration is granted, and judgment will be entered granting the relief sought in Servair's counterclaim. Leave is granted to reopen the action should it be necessary to do so to further implement the court's judgment or to enforce any arbitration award. It is intended, however, the judgment to be entered will be final in order to avoid questions such as those presented in *Hartford Financial Systems v. Fla. Software Serv.*, 712 F.2d 724 (1st Cir.1983) (stay issued under arbitration act ordinarily not appealable for it is neither final nor an injunction); *Standard Chlorine of Delaware, Inc. v. Leonard*, 384 F.2d 304 (2d Cir.1967) (order staying action pending arbitration not final).

IT IS SO ORDERED.