In the Matter of the Arbitration between BRANISLAV JEVRE-
MOV, Appellant, and VINCENT CRISCI, Respondent.

First Department, June 30, 1987

## APPEARANCES OF COUNSEL

*David Eugene Wolff* of counsel *(Robert G. Bennisch* with
him on the brief; *Berman, Paley, Goldstein & Berman,* attor-
neys), for appellant.

*Leonard A. Rodes* of counsel *(Kronish, Lieb, Weiner &
Hellman,* attorneys), for respondent.

## OPINION OF THE COURT

SANDLER, J. P.

The issue on this appeal is whether an individual who is the
president of a corporation may be compelled to arbitrate when
he signed a contract containing an arbitration clause in his
capacity as president of the corporation only, and did not sign

that contract in his individual capacity, although a separate space for so signing was provided in the contract.

Petitioner-appellant Branislav Jevremov is the president of Innerspace, Inc., a corporation engaged in the business of renovating and reconstructing the interiors of residential and commercial space in New York City. In August 1985, Jevremov, acting as a representative of Innerspace, negotiated for the remodeling of a loft owned by the respondent, Vincent Crisci, located at 12 East 12th Street in Manhattan. On August 29th, Jevremov sent Crisci a form agreement containing the terms agreed upon, which named Crisci as the owner, and Innerspace, Inc. as the contractor. After further negotiations, during which time both parties were represented by counsel, counsel for Crisci retyped the contract to contain new terms, and, as here pertinent, named "Branislav Jevremov and Innerspace, Inc." as cocontractors, and provided two separate signature lines—one reading "Innerspace, Inc. By: Branislav Jevremov, President", and the other simply "Branislav Jevremov". This particular change was made because, according to Crisci, a prior remodeling job performed for Crisci by Innerspace Woodworking, Inc. (another corporation of which Jevremov was the principal owner) was not timely performed, and Crisci therefore wished to have Jevremov named personally as cocontractor so that he would be personally responsible for any damages caused by delays in the 12 East 12th Street remodeling job.

On September 23, 1985, Jevremov executed the contract on behalf of Innerspace, Inc. by signing his name on the line which read, under the word "CONTRACTOR", "Innerspace, Inc. By: Branislav Jevremov, President", but he did not sign the contract on the line beneath which was typed "Branislav Jevremov." The absence of Jevremov's signature on the individual signature line is apparent and, in my view, legally significant and determinative. After Jevremov signed as indicated, Crisci signed the contract as owner. Both parties also initialed each page of the contract and all handwritten changes, as is often done to prevent the insertion of new pages or unilateral changes after execution.

Thereafter, disputes arose as to the performance and timing of the work, and on February 14, 1986 an amending agreement which extended performance dates was executed by the parties. It is relevant, although not necessary to a determination of this appeal, that only Innerspace, Inc. was named as

the contractor in the amending agreement, under which designation Jevremov placed his signature.

On March 13, 1986, Innerspace, Inc. served a demand for arbitration upon Crisci claiming wrongful termination. Crisci answered and counterclaimed against Innerspace and Jevremov for $199,013 damages, and demanded arbitration against Jevremov personally. On May 6, Jevremov moved pursuant to CPLR 7503 (b) to permanently stay arbitration against him in his individual capacity, on the ground that he never agreed to be bound in his individual capacity under the contract, and never agreed in his individual capacity to be bound by the arbitration clause contained therein. The Supreme Court (Ethel B. Danzig, J.) denied Jevremov's motion, and this appeal followed. The motion should have been granted.

In *Salzman Sign Co. v Beck* (10 NY2d 63, 66-67), the Court of Appeals reiterated "the settled rule that an agent for a disclosed principal 'will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal' " (quoting from *Mencher v Weiss,* 306 NY 1, 4). It is significant that in *Salzman* the contract terms stated that the officer or officers signing on behalf of the corporation would be personally liable under the contract. Nevertheless, the corporate officer who signed "Irving Beck pres L.S." was held not liable under the governing principle theretofore stated. The Court of Appeals in *Salzman* set forth the rationale behind the rule in language particularly pertinent to the facts presented in the instant case *(supra,* 10 NY2d, at 67) "In modern times most commercial business is done between corporations, everyone in business knows that an individual stockholder or officer is not liable for his corporation's engagements unless he signs individually, and where individual responsibility is demanded the nearly universal practice is that the officer signs twice—once as an officer and again as an individual. There is great danger in allowing a single sentence in a long contract to bind individually a person who signs only as a corporate officer."

In *Boas & Assocs. v Vernier* (22 AD2d 561), this court observed that the aforesaid rule is not limited to cases involving claims against an agent as guarantor of his principal's obligation, or to cases involving the Statute of Frauds. Accordingly, the conflicting allegations as to the real intent of the parties herein are insufficient to create a triable issue in the face of Jevremov's signing of the contract in his official

capacity only. *(See, Steelmasters, Inc. v Household Mfg. Co.,* 40 AD2d 963; *Hofbauer v Liss,* 18 AD2d 672; *cf., Carrolton Assocs. v Abrams,* 57 Misc 2d 617, 632.)

In considering the circumstance that Jevremov signed the contract only in his official capacity as the president of Innerspace, Inc., the trial court relied on two cases holding that an arbitration agreement which is in writing, but not signed, may be enforceable if there is sufficient proof that the parties agreed to arbitrate. In *Matter of Helen Whiting, Inc. (Trojan Textile Corp.)* (307 NY 360), the parties orally agreed on the sale to Whiting of three lots of cloth, each later confirmed by separate written contracts containing arbitration clauses. Whiting retained the contracts for several days, never objected to the arbitration clauses (which the court observed were commonly used in the textile industry), and signed one of the agreements containing an arbitration clause. The Court of Appeals held that under those circumstances there was sufficient proof to justify the finding below that the parties had agreed on arbitration. The Court of Appeals pointedly distinguished other cases where there was evidence of rejection of proposals for arbitration clauses *(supra,* 307 NY, at 367).

Insofar as *Matter of Helen Whiting, Inc. (supra)* can be analogized to the facts herein, there is to be found in the unsigned space designed for Jevremov's signature in his individual capacity, contrasted with his willingness to sign as president of Innerspace, Inc., a clearly expressed refusal on the part of Jevremov to be bound in his individual capacity to anything contained in the agreement, including the arbitration clause.

The other case relied upon, *Crawford v Merrill Lynch, Pierce, Fenner & Smith* (35 NY2d 291), is also distinguishable. In that case plaintiff had agreed to abide by the rules of the New York Stock Exchange when he applied to become a registered representative of Merrill Lynch, and one of those rules provided for arbitration before the Exchange of disputes arising out of employment with an Exchange member. Plaintiff was held bound by those rules even though his application was not signed by Merrill Lynch. There is nothing in the case now before us which would remotely warrant application of the principle applied in *Crawford v Merrill Lynch, Pierce, Fenner & Smith (supra)*.

What we do have is a provision in a contract, which was

inserted by Crisci, to provide added protection for him, and added (personal) liability exposure for Jevremov, which Jevremov pointedly refused to sign in his individual capacity. That Jevremov did not laboriously write out the words "as president of Innerspace, Inc." after each of his initials on each of the contract pages and handwritten changes (there are some 22 sets of initials on the contract and architectural plans) provides no rational basis for the conclusion reached below that Jevremov was thereby signifying his agreement to be bound on the contract in his individual capacity.

Accordingly, the order of the Supreme Court, New York County (Ethel B. Danzig, J.), entered March 23, 1987, which, *inter alia,* denied petitioner's motion pursuant to CPLR 7503 (b) for a stay of the arbitration commenced against him in his individual capacity by respondent, should be reversed, on the law, without costs, and the motion for a stay of the arbitration should be granted.

CARRO, KASSAL, ELLERIN and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on March 23, 1987, unanimously reversed, on the law, without costs and without disbursements, and the motion for a stay of the arbitration is granted.