In the Matter of NATIONWIDE INSURANCE COMPANY, Respondent, v RAJEEV SINGH, Appellant, et al., Respondents. [776 NYS2d 291]—

In a proceeding pursuant to CPLR article 75 to permanently stay arbitration of an uninsured motorist claim, Rajeev Singh appeals from an order of the Supreme Court, Nassau County (McCarty, J.), dated September 17, 2002, which denied his cross motion to dismiss the petition, granted the petition, and permanently stayed the arbitration.

Ordered that the order is reversed, on the law, without costs or disbursements, the cross motion is granted, the petition is denied, and the proceeding is dismissed.

The appellant, Rajeev Singh, claimed injuries as a result of an accident on August 4, 2001, caused by an allegedly uninsured vehicle that stopped short and then drove off following the accident. On March 8, 2002, Singh's attorney sent to his insurer, the petitioner, Nationwide Insurance Company (hereinafter Nationwide), by certified mail, return receipt requested, a letter enclosing an application for no-fault insurance benefits and a notice "with respect to uninsured and/or underinsured motorist benefits." This notice to which the letter referred was captioned "Notice of Intention to Make Claim and Arbitrate." It contained a statement pursuant to CPLR 7503 (c) that Singh "intends to demand arbitration" and that Nationwide would be precluded from raising the objection, inter alia, that a valid agreement had not been made or complied with unless Nationwide applied to stay arbitration within 20 days after receipt of the notice.

The letter was sent to Nationwide at its North Syracuse office, and its receipt is undisputed. On March 18, 2002, Robert Marino from Nationwide's Woodbury Claims Department sent a letter of disclaimer, inter alia, because the insured had failed to notify Nationwide of his claim as soon as practicable.

By a document dated June 12, 2002, Singh notified Nationwide that he was demanding arbitration before the American Arbitration Association (hereinafter the AAA) and that "unless the time to apply for a stay of arbitration has already expired" he repeated the preclusion warning authorized by CPLR 7503 (c) would apply. This document was served on Nationwide at its Woodbury office by certified mail, return receipt requested. Within 20 days of its receipt of this demand for arbitration, Nationwide commenced this proceeding to stay arbitration on the ground, inter alia, that Singh's notification of his claim was untimely.

Singh cross-moved to dismiss on the ground that the proceeding itself was not timely commenced. He relied on his notice of intention to arbitrate transmitted by his attorney's letter dated March 8, 2002, by certified mail, return receipt requested. In opposition, Nationwide's counsel argued in an affirmation that the notice of intention to arbitrate was not a formal demand to arbitrate against which a proceeding to stay would be required. Counsel further made passing mention that the notice of intention to arbitrate had been served on Nationwide in North Syracuse and that the demand for arbitration was served on Robert Marino in the Woodbury Claims Department, who was handling the uninsured motorist benefit claim.

The Supreme Court granted the petition to stay arbitration, holding that the proceeding was timely. It held that the notice of intention to arbitrate in its timing and circumstances was intended to mislead. Thus, the 20-day preclusion was measured from the later demand for arbitration. This was error.

The basis on which Nationwide sought to justify the timeliness of its application was that a notice of intention to arbitrate is not a demand for arbitration and that the 20-day preclusion of CPLR 7503 (c) applies only to the demand. However, CPLR 7503 (c) provides: "A party may serve upon another party a demand for arbitration or a *notice of intention to arbitrate* [containing the 20-day preclusion warning]." (Emphasis added.) Thus, the preclusion applies identically to a demand for arbitration and a notice of intention to arbitrate (*see* Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C7503:6). Indeed, the notice of intention has been characterized, as Singh's lawyer did in his March 8, 2002, letter, as simply a "Notice" by Professor David D. Siegel in New York Practice (Siegel, NY Prac § 593, at 1002 [3d ed]). Also, the seminal case on the preclusive effect of CPLR 7503 (c), *Matter of Jonathan Logan, Inc. (Stillwater Worsted Mills)* (31 AD2d 208 [1968], *affd* 24 NY2d 898 [1969]), arose not from a demand for arbitration but from a notice of intention to arbitrate.

It is true, as Nationwide contends, that service intended to conceal a notice of intention to arbitrate and to precipitate an insurer's default will not be given preclusive effect when the notice is buried among unrelated documents or is served on a remote office of the insurer (*see Crawford v Merrill Lynch, Pierce, Fenner & Smith,* 35 NY2d 291, 296 [1974] [notice for arbitration before AAA not served on attorneys representing the defendant in action in which the defendant had moved to compel arbitration before NYSE, but was served on an office different from the one on which the summons commencing the action had been served; notice contained misleading statements suggesting that the plaintiff was joining in the defendants' motion to compel arbitration before the NYSE]; *Matter of Insinga v Liberty Mut. Ins. Co.,* 265 AD2d 411, 412 [1999] [notice, served on respondent, not its attorneys, was hidden among voluminous other documents to prevent respondent from contesting arbitrability]; *Matter of Balboa Ins. Co. v Barnes,* 123 AD2d 691 [1986] [demand for arbitration enclosed in the middle of a packet of 11 documents mailed to the insurer's home office in California despite a prior request that future correspondence be sent to the New York office]; *Rider Ins. Co. v Marino,* 84 AD2d 832 [1981] [demand mailed to insurer at address unrelated to

the business at hand and placed amidst a packet of documents submitted in support of the claim with a covering letter adumbrating reference to the demand]). Yet, these cases were not decided in a vacuum. The issue of misleading tactics had to be raised by the petitioners who tardily sought to stay arbitration, and had to be supported by someone with knowledge of the facts on the basis of which they contended that they had been misled.

In the case at hand, Nationwide never claimed to have been misled; this came only from the Supreme Court. Furthermore, no affidavit by a Nationwide claims employee was submitted that would support the conclusion that Nationwide was misled. This Court confronted just such a situation in *Matter of State-Wide Ins. Co. v Rowe* (228 AD2d 606 [1996]). There, the tardy motion to stay arbitration (sought by way of a notice of intention to arbitrate) was rejected by the court on the one ground originally asserted in the petition (*see Matter of Steck,* 88 NY2d 827 [1996]). It was not until State-Wide Insurance Company moved for renewal that it raised the claim of a defective and misleading notice of intention to arbitrate. In *Rowe,* at least the contention was supported with an affidavit of the claims department manager. This Court affirmed the rejection of this new ground articulated in the renewal motion since the argument and facts were known at the time of the original petition.

The *Rowe* case compels us to reverse the grant of a stay of arbitration of Singh's uninsured motorist claim. Nationwide never made the claim, interposed in the *Rowe* case only on renewal, that its time to move to stay arbitration was defeated by trickery. Nor does it seem that it could support such a claim. Singh's attorney did not bury the notice of intention to arbitrate among a sheaf of other documents. He only transmitted one other document with it, namely an application for no-fault benefits. Furthermore, this was transmitted, quite understandably, to Nationwide's North Syracuse office because that is the location of its no-fault division. The record demonstrates that this location had no adverse effect on Nationwide's ability to respond with alacrity and to move to stay arbitration within 20 days because Nationwide, in fact, sent a disclaimer letter dated a mere 10 days later from its Woodbury office.

Accordingly, the Supreme Court erred in denying Singh's cross motion to dismiss and in granting Nationwide's untimely petition to stay arbitration since the evidence does not support the conclusion that Nationwide was misled into filing an untimely petition, and Nationwide itself never raised this issue. Santucci, J.P., Adams, Crane and Cozier, JJ., concur.