# SUPREME COURT OF THE STATE OF NEW YORK
## Appellate Division, Fourth Judicial Department

**161**
**CA 15-01314**
PRESENT: WHALEN, P.J., CENTRA, LINDLEY, TROUTMAN, AND SCUDDER, JJ.

---

JEFF CONIBER, DOING BUSINESS AS JEFF CONIBER
TRUCKING, PLAINTIFF-RESPONDENT,

                         V                                    MEMORANDUM AND ORDER

CENTER POINT TRANSFER STATION, INC., MATTHEW W.
LOUGHRY AND KENNETH LOUGHRY, DEFENDANTS-APPELLANTS.
(APPEAL NO. 2.)

---

THE WOLFORD LAW FIRM LLP, ROCHESTER (MICHAEL R. WOLFORD OF COUNSEL),
FOR DEFENDANTS-APPELLANTS.

PIRRELLO, PERSONTE & FEDER, ROCHESTER (STEVEN E. FEDER OF COUNSEL),
FOR PLAINTIFF-RESPONDENT.

--------------------------------------------------------------------------------------------------------

Appeal from a judgment of the Supreme Court, Wyoming County
(Michael M. Mohun, A.J.), entered April 6, 2015.  The judgment awarded
plaintiff money damages as against defendants, jointly and severally.

It is hereby ORDERED that the judgment so appealed from is
unanimously affirmed without costs.

Memorandum:  Plaintiff commenced this action seeking damages for
defendants' alleged breach of a waste hauling agreement (Agreement).
Following a nonjury trial, Supreme Court awarded plaintiff $755,125.58
in lost profits and $4,884.44 as late payment penalties and interest.
Defendants appeal, and we now affirm.

Contrary to defendants' contention, the court's determination
that defendants breached the Agreement is supported by a fair
interpretation of the evidence and should not be disturbed where, as
here, "the findings of fact rest in large measure on considerations
relating to the credibility of witnesses" (*Thoreson v Penthouse Intl.*,
80 NY2d 490, 495, *rearg denied* 81 NY2d 835 [internal quotation marks
omitted]).  The testimony and evidence at trial supports the court's
conclusion that defendants unequivocally and finally repudiated the
Agreement when defendant Kenneth Loughry ordered plaintiff to remove
all of his equipment from defendants' property and refused plaintiff's
subsequent request to resume his duties under the Agreement (*see
Norcon Power Partners v Niagara Mohawk Power Corp.*, 92 NY2d 458, 462-
463; *Howard v BioWorks, Inc.*, 83 AD3d 1588, 1588-1589; *cf. Children of
Am. [Cortlandt Manor], LLC v Pike Plaza Assoc., LLC*, 113 AD3d 583,
584).  Such action constitutes an unequivocal and " ' "overt
communication of intention" not to perform' agreed-upon obligations"

(*Howard*, 83 AD3d at 1588-1589, quoting *Tenavision, Inc. v Neuman*, 45 NY2d 145, 150).

We also reject defendants' contention that defendants Matthew W. Loughry and Kenneth Loughry (Loughry defendants) cannot be held individually liable. Viewing the evidence in the light most favorable to sustain the judgment (*see Matter of City of Syracuse Indus. Dev. Agency [Alterm, Inc.]*, 20 AD3d 168, 170), we conclude that there is " 'clear and explicit evidence' " that the Loughry defendants signed the Agreement in their individual capacity rather than as agents of defendant Center Point Transfer Station, Inc. (*Salzman Sign Co. v Beck*, 10 NY2d 63, 67, quoting *Mencher v Weiss*, 306 NY 1, 4; *see Savoy Record Co. v Cardinal Export Corp.*, 15 NY2d 1, 4). First, the signature line for Matthew Loughry to sign as "President" of the corporation was left blank, but the signature line for each Loughry defendant to sign as a "Supplier" under the Agreement was executed (*cf. Matter of Jevremov [Crisci]*, 129 AD2d 174, 176-177). Second, after the confrontation between plaintiff and Kenneth Loughry, defendants' attorney mailed a letter to plaintiff enclosing a check to pay the entire balance due "pursuant to the contract . . . between [plaintiff] and Matthew Loughry and Kenneth Loughry." Finally, Kenneth Loughry testified at trial that he never had any intention to bind the corporation when he signed the Agreement. Although the Loughry defendants testified at trial that they did not intend to be bound by the Agreement, their subjective intent "is not material" to the analysis (*Pimpinello v Swift & Co.*, 253 NY 159, 162).

Based on the testimonial and documentary evidence submitted at trial, we conclude that the court's award of lost profits is supported by a fair interpretation of the evidence (*see City of Syracuse Indus. Dev. Agency*, 20 AD3d at 170). Contrary to defendants' contention, the lost profits sought in this action are general, not consequential, damages inasmuch as plaintiff "seeks only to recover money that the breaching party agreed to pay under the contract" (*Tractebel Energy Mktg., Inc. v AEP Power Mktg., Inc.*, 487 F3d 89, 109; *see generally Biotronik A.G. v Conor Medsystems Ireland, Ltd.*, 22 NY3d 799, 805; *American List Corp. v U.S. News & World Report*, 75 NY2d 38, 42-43), and plaintiff established that the damages he claimed were the difference between the payments specified in the contract and the cost of plaintiff's performance of that contract (*see Tractebel Energy Mktg., Inc.*, 487 F3d at 109-110; *see generally R & I Elecs. v Neuman*, 66 AD2d 836, 837).

While we agree with defendants that there is a measure of uncertainty with respect to plaintiff's claims of lost profits, it is well settled that, "when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. A person violating his [or her] contract should not be permitted entirely to escape liability because the amount of the damages which he [or she] has caused is uncertain" (*Wakeman v Wheeler & Wilson Mfg. Co.*, 101 NY 205, 209; *see R & I Elecs.*, 66 AD2d at 837-838). Here, plaintiff

presented an "adequate basis for computing th[at] amount" (*Plant Planners v Pollock*, 60 NY2d 779, 780-781), inasmuch as plaintiff had personal and actual knowledge of the costs of the business (*see Wathne Imports, Ltd. v PRL USA, Inc.*, 125 AD3d 434, 434; *S.J. Kula, Inc. v Carrier*, 107 AD3d 1541, 1542-1543; *cf. R & I Elecs.*, 66 AD2d at 838). Contrary to defendants' contention, plaintiff's business was not a new business from which there was no basis to estimate lost profit (*see Wolf St. Supermarkets v McPartland*, 108 AD2d 25, 33, *appeal dismissed* 65 NY2d 785, *lv dismissed* 68 NY2d 833; *cf. Manniello v Dea*, 92 AD2d 426, 429). We have reviewed defendants' remaining contentions concerning possible events that could have affected plaintiff's profit, and we conclude that those speculative contentions are not supported by the proof at trial and do not warrant any modification to the court's award of damages.

We reject defendants' contentions that plaintiff waived his right to seek an award for late payment penalties and interest and that the amount awarded is not supported by the record. Waiver is "the voluntary and intentional relinquishment of a contract right" (*Stassa v Stassa*, 123 AD3d 804, 805, *lv dismissed* 25 NY3d 960; *see Team Mktg. USA Corp. v Power Pact, LLC*, 41 AD3d 939, 941-942), and it " 'cannot be inferred from mere silence' " (*Stassa*, 123 AD3d at 806). There is no dispute that plaintiff did not assess late fees or interest during the first few months of the contractual relationship and did not act to enforce payment of the late fees and interest until the complaint was filed. Plaintiff did, however, begin adding late payment penalties and notices about late payments within months after the contractual relationship began. Inasmuch as "waiver 'should not be lightly presumed' and must be based on 'a clear manifestation of intent' to relinquish a contractual [provision]" (*Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P.*, 7 NY3d 96, 104), we conclude that plaintiff's inaction or silence in the face of defendants' failure to pay the late payment penalties and interest cannot constitute a waiver. There was simply no " 'affirmative conduct or . . . failure to act so as to evince an intent not to claim' " those contractually-derived payments (*id.; see EchoStar Satellite L.L.C. v ESPN, Inc.*, 79 AD3d 614, 617-618).

Finally, defendants contend that the court failed to explain how it calculated the amount of late payment penalties and interest awarded, i.e., $4,884.44, and that, without such an explanation, the calculation of damages is flawed. We reject that contention. In his complaint, plaintiff sought only $4,884.44, which represented the late payment penalties and interest for the bills that were still outstanding at the time the action was commenced. Although plaintiff presented proof at trial that defendants owed more than $30,000 in late payment penalties, it is well settled that "a party cannot recover more in a monetary judgment than is requested in his [or her] demand for relief" (*Loomis v Civetta Corinno Constr. Corp.*, 54 NY2d 18, 20, *rearg denied* 55 NY2d 801). "In the absence of a motion to amend the ad damnum clause, damages [were] limited to the amount sought in the complaint" (*17 E. 80th Realty Corp. v 68th Assoc.*, 173 AD2d 245, 249; *see Bank of Richmondville v Terra Nova Ins. Co.*, 263

AD2d 786, 788).  We thus conclude that the award of damages, as limited by the relief sought in the complaint, is supported by the record.

Entered:  March 18, 2016                    Frances E. Cafarell
                                            Clerk of the Court