*908 OPINION OF THE COURT
Philip S. Straniere, J.
The claimant, the Doo Wop Shoppe Ltd., commenced this action in Small Claims Court against the defendant, Ralph Edwards Productions, doing business as The Peoples (sic) Court, seeking damages for “defective services rendered”. A trial was held on September 17, 1998. Both sides appeared pro se by authorized representatives.
BACKGROUND
On or about July 31, 1997, Gunn & Sharib Associates Inc., doing business as the Doo Wop Shoppe (Gunn), commenced an action in Small Claims Court, Richmond County, against T&B Restaurant Equipment (T&B) alleging that the defendant had sold the claimant defective merchandise on July 5, 1996; more particularly, the defendant had refused to replace or repair a used refrigerator that the claimant had purchased, which had ceased to work properly. The matter was set for trial on September 25, 1997. It was subsequently adjourned to October 23, 1997.
As part of its screening process to locate cases that would make interesting subjects for broadcast, the People’s Court examined the small claims filings in Richmond County and determined that the fact pattern in Gunn & Sharib Assocs. v T&B Rest. Equip. would be entertaining and perhaps educational and worthy of taping for potential television airing.
On September 16, 1997 representatives of both Gunn and T&B signed an agreement with Ralph Edwards Productions, as the producer of the People’s Court (producer). The document is entitled “ ‘The People’s Court’ Agreement to Arbitrate” (Agreement). It is apparently a standard form of agreement used by the producer for all participants on the program. The Agreement recited a brief statement of the nature of the cause of action being asserted in Small Claims Court, which the parties were agreeing to have resolved on the “People’s Court”.
At paragraph 3 of the Agreement the parties consented to having their controversy submitted to arbitration, with former New York City Mayor and distinguished New York University School of Law alumnus Edward Koch serving as the arbitrator. The document further stated that: “It is further agreed that any judgment awarded by the Arbitrator shall be final and binding on both Plaintiff and Defendant. Both parties hereby agree to dismiss their existing Claims in Small Claims Court, *909 with prejudice, in accordance with Paragraph 3 of the Rules. Plaintiff and Defendant hereby waive any all [sic] rights either may have to appeal in any court the judgement [sic] rendered by the Arbitrator.”
The Agreement goes on to discuss the manner in which the litigants will be compensated for appearing and taking part in the arbitration. Payment is made from a fund provided by the producer; no resources of the litigants are used to resolve the issues. The parties release each other from any claims arising from either the appearance on the program, the arbitration of the claims, or the terms of the Agreement. The litigants are informed that if they comply with the terms of the judgment rendered by Koch they will be paid in accordance with the terms of the Agreement. However, “If the judgment is not complied with, the defaulting party shall receive nothing, and the Arbitrator shall then determine or redetermine the money damages.” (Agreement ¶ 6 [b].)
The document goes on to provide that: “7(a). Plaintiff and Defendant hereby release and forever discharge the Arbitrator, the Producer and the Producer’s officers, agents, licensees and employees * * * from any and all claims, demands and actions of every kind and nature whatever, whether or not now known or suspected, which Plaintiff or Defendant now has or may hereafter have against the Released Parties * * * based upon or related to any agreement, obligation, claim, or matter whatever occurring or existing at any time up to and including the date hereof (including, but not limited to, this Agreement, the Claims, the arbitration of the Claims, and the recording and editing of the arbitration; and excepting only Producer’s obligation to Plaintiff and Defendant in accordance with paragraph 5 above).”
Attached to the Agreement to Arbitrate as an exhibit were “ ‘The People’s Court’ Rules” (Rules). Part of paragraph 3 of the Rules informs the parties that in the event their case is selected to be arbitrated on the program, they must sign a written request for dismissal of their small claims action. This dismissal will be with prejudice. It is explained that “with prejudice” means that the parties are agreeing that their claims may not thereafter be refiled in Small Claims Court. The producer of the program assumes responsibility for filing the dismissal with the court.
In the section of the Rules labeled “The Judgment” it is explained that the arbitrator’s decision shall to the maximum extent possible under applicable law be “final and binding”.
*910 On September 16,1997 the representatives of Gunn & Sharib and T&B Restaurant signed a “Stipulation of Settlement” to be filed in Small Claims Court, Richmond County, dismissing their action with prejudice as the claim “is settled” and releasing each other from liability as per the terms of the Agreement to Arbitrate. (The court notes that the stipulation form, while valid in its terms, refers to the “Superior Court of New York-Law Division-Special Civil Part Richmond County”. Although the Office of Court Administration has made several proposed changes to the New York court system, one of them does not include changing the name of the Civil Court to Superior Court.)
On September 16,1997 the parties appeared at the producer’s studio, executed the Agreement to Arbitrate, the copy of the Rules, and the stipulation of dismissal of the small claims action. The parties then appeared before Koch and presented their case. The matter was taped on that date and aired on syndicated national television on October 22, 1997.
After hearing all the evidence, Koch entered a judgment in favor of the claimant in the amount of $850. This represented a finding that the claimant was entitled to be reimbursed for the cost of the used refrigerator in the amount of $700, plus $150 for money expended for repairs. The claimant was denied any compensation for “warm” beer he allegedly lost while in possession of the refrigerator, as Koch determined that the claimant failed to mitigate his damages in a reasonable manner, such as placing the beer in barrels of ice, rather than leaving it in a malfunctioning machine.
As was provided in the Agreement to Arbitrate, the claimant received an additional $50 from the fund. Although Koch’s judgment is against the defendant, pursuant to the Agreement and Rules the claimant is totally compensated from the producer’s fund. The defendant had not asserted any counterclaim. T&B incurred no actual monetary damages and was paid $50 from the producer’s fund as well, pursuant to the terms set forth in the Agreement. At no time, either in his decision on the program or thereafter, did Koch indicate that upon receipt of the payment must the claimant return the used refrigerator to the defendant.
After appearing for the taping Gunn signed a form entitled “The People’s Court Litigant Acknowledgment”. The document set forth the amount of money Gunn was to receive ($900) and acknowledged that it was being paid in full satisfaction of all claims against Ralph Edwards Productions and others. It fur *911 ther asks the participant to indicate to what address the check should be sent. A similar document was signed by T&B for $50.
Thereafter, the claimant refused to return the refrigerator, claiming that it was not part of Koch’s decision; therefore, he could keep it. The producer stated that in 14 years of broadcasting the People’s Court they never had a litigant refuse to return an item that was a subject of the lawsuit.
The producer claims that about three days later he notified the claimant that in order to be paid he would have to return the refrigerator to T&B Restaurant Equipment. The producer indicated that Gunn agreed to do so but that it would take two weeks to effectuate the transfer. The claimant stated that he was not told to do this until three weeks after the taping. In any case, he did not return the item.
The producer testified that on or about October 7, 1997 Gunn notified him that he would not return the refrigerator. After further discussion on October 10, 1997, Gunn agreed to do so on October 18, 1997. This was memorialized in a letter from the producer to Gunn, dated October 10, 1997, in which the producer notified Gunn that T&B would pick up the machine at noon on October 18, 1997 and upon being notified of the transfer, the producer would issue a check to Gunn for $900. When the producer spoke to Gunn on October 18, 1997 he again refused to surrender the unit. As a result of Gunn’s intransigence, the producer invoked the terms of the Agreement 6 [b]), canceled the award to Gunn and issued a check to Gunn on November 3, 1997 for $250. Paragraph 5 of the Agreement states: “In consideration for appearing and taking part in the arbitration, Plaintiff and Defendant shall share in a fund provided by Producer, ranging from $500.00 to $3,100.00 depending on the size of the judgment. Neither Plaintiff not Defendant will receive less than $50.00. Specifically (a) If no money is awarded on either Plaintiff’s claim (or Defendant’s claim, if there is one), the $500.00 is divided equally, that is, each receives $250.00.” An additional $200 check would, also have to be paid to T&B Restaurant pursuant to the terms of this paragraph. Gunn received the $250 check but refused to cash it.
On December 30, 1997 Gunn filed the within small claims action in Civil Court, Richmond County, in the name of the Doo Wop Shoppe Ltd., seeking $3,000 in damages from Ralph Edwards Productions, alleging “defective services rendered on September 16, 1997”. (The court notes that the Agreement is *912 between Gunn & Sharib Associates Inc., doing business as the Doo Wop Shoppe, the claimant in the initial small claims action [SCR 60178/97], and Ralph Edwards Productions, yet the current action [SCR 60302/97] is by the Doo Wop Shoppe Ltd. as the claimant, an entity that was not a party to the initial action or Agreement.)
The original return date of the instant case was February 10, 1998. The matter was adjourned on consent until March 18, 1998. On or about March 18, 1998 the action was allegedly settled between Gunn’s attorney and the producer for $750. A letter from claimant’s counsel was filed in court reciting the existence of a settlement but not setting forth any terms. On March 25, 1998 the producer issued a check in the amount of $750 to the Doo Wop Shoppe. This check was accepted by Gunn and cashed. On March 25, 1998 the producer issued a stop payment on the $250 check issued on November 3, 1997. On or about April 10, 1998 Gunn sought to negotiate the $250 check and learned that payment had been stopped. The matter again appeared on the court’s calendar on April 16, 1998 and apparently was marked off calendar for no appearance by any of the parties.
On May 20, 1998 Gunn, as president of the Doo Wop Shoppe Ltd., filed an affidavit with the court to vacate a default on the grounds that the defendant had stopped payment on a check after settling the matter with claimant’s attorney. The case was restored to the Small Claims Calendar on June 11, 1998 and after several more adjournments was tried on September 17, 1998.
ISSUES PRESENTED
A. Does Submission of a Dispute to the People’s Court Qualify as Arbitration?
Persons selected to participate in the People’s Court are asked to sign a document entitled “Agreement to Arbitrate”. The question remains, however, is this process really arbitration or something else?
Black’s Law Dictionary (96 [5th ed 1979]) defines arbitration as “[t]he reference of a dispute to an impartial (third) person chosen by the parties to the dispute who agree in advance to abide by the arbitrator’s award issued after a hearing at which both parties have an opportunity to be heard.” New York recognizes two systems of arbitration, statutory, pursuant to CPLR article 75 and common law. Since there is a written *913 agreement in this case, the rules applicable to statutory arbitration would be invoked and a cause of action based on common-law theory would not be permissible (See, Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C7501:1 et seq.).
The Agreement has all the trappings of an arbitration contract except for the provision that if no money or less than $500 is awarded by the arbitrator the parties divide a minimum of $500 according to a schedule set forth in the agreement and the payment of any damages awarded by the “arbitrator” comes not from the litigants, but from the producer. Since an arbitration is designed to resolve a dispute between the parties without resorting to the court systém, and the People’s Court does in fact accomplish this, does the provision compensating the parties for their participation make this process not a true arbitration? This court must answer the question that the People’s Court is not a true arbitrator.
Just as Esau traded his birthright to Jacob for a plate of bread and lentil stew (Genesis 25:29-25:34); and Jack traded his milk cow for some magic beans (Old English fairy tale incorporated into the Stephen Sondheim musical Into The Woods); so, too, have the litigants in this action traded their rights to use the court system for what Andy Warhol called their “fifteen minutes of fame”.
The persons who appear on the People’s Court are sacrificing any right they might have to redress of the courts should they be dissatisfied with the outcome of the “arbitration”. They are agreeing to be compensated by the producers and not from the other litigant in consideration for waiving their rights to have their dispute resolved in a forum that is regulated by statute, case law and court rules, and has an appeals process. If they were interested in merely resolving the underlying issues they would have remained in the forum the claimant had initially selected, Small Claims Court, or sought to use one of the other recognized alternate dispute resolution mechanisms which only seek to settle disputes but do not provide a television appearance in the process.
The “People’s Court” is not a form of arbitration recognized in New York State and the rights and protections afforded persons who engage in arbitration are not available to participants in that program.
*914 B. Does the Civil Court Have Jurisdiction to Resolve this Claim?
A party dissatisfied with the results of an arbitration could avail himself of the CPLR which permits the award of an arbitrator to be vacated or modified in certain situations (CPLR 7511). An application to vacate or modify an award may be made by a party within 90 days after delivery to him (CPLR 7511 [a]). This being the case, if this process was deemed to be an “arbitration”, the claimant would have had to have commenced an action to modify or vacate the award within 90 days of the date of the Koch hearing on September 16, 1997, or by December 15, 1997. Gunn did not file his small claims action until December 30, 1997. At that time, even if the court had the ability to hear this matter, it was time barred. CCA 206 gives the Civil Court the authority to decide certain issues involving arbitrations, including proceedings in regard to awards under CPLR article 75.
When Gunn brought his action in December 1997 he was in effect seeking to compel the arbitrator to modify his award. Gunn was seeking to receive the authorization to keep the refrigerator that was not mentioned in the pronouncement of Koch, in addition to the $850 awarded as damages, plus the $50 contract fee. CPLR 7511 (c) permits modification of the award if:
“1. there was a miscalculation of figures or a mistake in the description of any person, thing or property referred to in the award; or * * *
“3. the award is imperfect in a matter of form, not affecting the merits of the controversy.”
However, such an action must be brought as a special proceeding (CPLR 7502) and in conformity with CPLR article 4. By bringing this action in Small Claims Court Gunn is not in compliance with the appropriate statute. He has not brought a special proceeding. The action would have to be dismissed on this ground as well.
Even if the Agreement was a valid arbitration agreement, Gunn’s application would be time barred and dismissed. It would also fail, as he was required to commence a special proceeding in the appropriate forum and not in Small Claims Court.
*915 C. Is a Cause of Action Against the Producer Barred by the Agreement?
By the clear and unequivocal language of the Agreement the parties consented to the award of the arbitrator as being final and binding on both of them and they waived the right to have an appeal of the arbitrator’s decision to any court (Agreement ¶ 4). This being the case, if either of the litigants, that is, Gunn or T&B, was dissatisfied, they would be precluded from seeking redress of their grievance in the courts of New York. Similarly, the parties have agreed not to pursue the People’s Court in regard to any dispute except for the enforcement of the obligation to be paid pursuant to the Agreement (Agreement ¶ 7 [a]). Were this an agreement that would prevent a litigant from utilizing the courts to seek a redress of grievances, and thereby leaving that party remediless, such an agreement might violate public policy and be unenforceable. In the instant case, this is not so. The parties have voluntarily sold their right to utilize the court system for monetary compensation and the opportunity to be seen on television. There clearly was consideration received by the participants in exchange for abandoning the court system. The Agreement does not violate public policy.
It is difficult to discern exactly what relief the claimant was seeking in this matter. His complaint indicates that he is claiming he is owed $3,000 from the defendant producers. How he arrived at this number is unfathomable and is so inconsistent with the evidence it seriously questions his credibility. Under the Agreement he would have been entitled to the $900 the producers agreed to pay. He asserts that he is entitled to legal fees in this regard owing to his need to retain an attorney to resolve this matter. Under current theories of American jurisprudence, legal fees are not recoverable in this situation. In any case, there is no showing that Gunn even had an attorney involved at any time prior to the initiation of this lawsuit when he allegedly suffered the damages resulting from the producer’s failure to pay.
If claimant is alleging that, in addition to the monetary compensation he received, he is entitled to either keep the defective refrigerator or be given the cost of it, neither of these theories is viable. By Koch awarding him the money he had paid to T&B for the unit and the money he spent on repairing it, claimant was made whole and was placed in the position he would have been in had he never purchased the machine. Once he received the money to which he was entitled, the claimant *916 no longer had any ownership interest in the refrigerator. If this matter had been resolved in Small Claims Court, the claimant would have had to have delivered the object to the defendant. The failure to order this in a judgment could have been corrected by making a motion in Small Claims Court to correct any such error. However, this is the “People’s Court” and since the producers actually pay the monetary awards to the participants, an argument can be made that upon payment of the award, title to the refrigerator would revert to the producers. It should be pointed out that the defendant in the initial action, T&B Restaurant, has not participated at all in this litigation. This would indicate that either they were compensated for the unit, assigned any rights they had therein to the producers, or did not really care what happened to it. In any case, there exists no legal theory under which the claimant can assert a right to ownership of the refrigerator.
Gunn bases his entire case on the fact that Koch, in making his judgment, did not award the refrigerator to either party, an oversight that is entirely understandable considering that it is hornbook law that the defective product must be returned if the purchaser is fully refunded the purchase price. (Parenthetically, the court observed the entire unedited tape of the proceedings and can safely conclude that Koch correctly decided the case based on the applicable law and the facts as presented. The only error was not specifically stating the fate of the refrigerator.) Koch could have corrected this by simply amending his award by a subsequent writing when the producers learned of the problem, since the parties had agreed to be bound by the arbitrator’s decision. Further, since this is entertainment and not courtroom law, the producers could have filmed a new ending to the case between the taping and airing date, correcting the error. The change could have been followed up with a clarified settlement form. The producers were aware of the claimant’s dissatisfaction in early October 1997, several weeks before the case was aired, and could have eliminated the problems prior to broadcast since the right to edit or change remained with the producers (Rules 8).
Based on the foregoing, it is clear that the claimant has failed to assert a viable cause of action against the producers. The participants agreed to forego the use of the court system and its protections. They contracted to engage in what might be classified as alternative dispute resolution. They are bound by their choice.
*917 D. Is There Another Theory that Would Permit Recovery by the Claimant?
When the claimant refused to surrender the refrigerator, the producers unilaterally invoked the provisions of the Agreement that allowed them either to award nothing to a defaulting party or permitted the arbitrator to redetermine the money damages. In November 1997, when this was done, $250 was tendered to both the claimant, Gunn, and T&B, the defendant in that action. T&B received and cashed the $250 check. Although he was paid $250, Gunn did not attempt to negotiate the check until five months later. Gunn alleges that the matter was later settled for $1,000; that is, the original $900 award plus $100 for his attorney’s fees. He acknowledges that pursuant to this later settlement agreement he was also to return the refrigerator. He asserts that the $1,000 was to be paid by a $750 check to be issued in addition to the $250 check previously received in November 1997. Gunn’s attorney sent a letter to Small Claims Court on March 18, 1998 informing the court of the settlement but did not set forth any of the terms and conditions.
The producers assert that the settlement was $750, to be paid to Gunn and that he was to keep the refrigerator. The $250 check was not to be cashed. The terms of this settlement were memorialized by a letter from the producers to Gunn dated March 25, 1998. There is nothing to indicate that Gunn or his attorney specifically agreed to these terms other than Gunn cashed the $750 check. The producer asserts that this check was dated March 20, 1998 and accompanied the letter of settlement.
Although the court has declined to entertain claimant’s action arising from the terms of the arbitration Agreement for the reasons set forth above, it could be argued that if a valid, independent settlement agreement was in fact reached, the court could permit the claimant to amend his complaint to allege a cause of action to enforce the terms of the settlement. If the court elects to do so, it will still have to determine what were the terms of the settlement agreement, $1,000 plus the retention of the refrigerator as alleged by the claimant, or $750 plus claimant keeping the unit, as asserted by the defendant producer.
Since the claimant in his initial action was seeking total damages in the amount of $1,750 and Koch only awarded him $850 for his out-of-pocket losses, to accept the claimant’s contention would put Gunn in virtually the same position he *918 would have been in had Koch awarded him the entire amount he claimed was due, that is, $1,000 cash plus a $700 refrigerator. It is unlikely that the producers would be willing to agree to such a settlement since to do so would encourage dissatisfied litigants on the “People’s Court” to commence litigation against the producers. The result would be a total stripping of the show of its robe as an alternate dispute resolution proceeding, leaving it exposed as a mere entertainment vehicle, with no rules to cover its participants. This court is not willing to deny the enforceability of the agreement between the producers and the litigants as it is a contract voluntarily entered into by the parties. The settlement made by the producers of $750 plus Gunn keeping the refrigerator, by its terms, resulted in a $1,450 payment to the claimant and a windfall of $550 beyond what Koch awarded. When the $250 paid to T&B is factored into the equation, under the producers’ scenario they would have incurred costs of $1,700, which is $150 less than their total exposure had Koch awarded Gunn the full amount demanded in the complaint. To accept Gunn’s position would lead to an expenditure of $1,950, an amount $100 more than the producers would have paid in a worst-case scenario from the contracted-for suit.
An analysis of each party’s position reveals that neither of them can be supported by legal theory or precedent and the facts as presented can only be sustained as a negotiated settlement. In either situation, unless the producers obtained a release from T&B or a transfer of ownership of the refrigerator from them, they were leaving themselves open for a suit from T&B for the return of the refrigerator or its value. Nowhere in the Agreement or the Rules of the “People’s Court” does it indicate that upon payment of the fees set forth in the documents to the participants the subject matter of the litigation becomes the property of the “People’s Court”. If it did, after 14 years of broadcasts, Ralph Edwards Productions would have in its possession enough defective transmissions, unhealthy puppies and an untold number of other items of personalty to rival the back lot at Universal Studios, Second Hand Rose’s father’s store inventory (G. Clarke and J.F. Hanley) or Fibber McGee’s closet.
The position asserted by the producers as to the terms of the settlement are more credible. Gunn should only be entitled to the $750 he previously received to resolve this matter.
It should be pointed out that if this Agreement were to be determined to be subject to enforcement as a common-law *919 arbitration agreement, Gunn would have a . cause of action to enforce the terms of the contract. Such an action would have to be brought within one year from the date of the award (CPLR 215 [5]). Gunn would have commenced this claim in a timely manner by filing the small claims action in December 1997. Even if this were the case, the analysis cited above, the Agreement would permit the producer to redetermine the award for noncooperation. Gunn would only be entitled to $750 in this situation.
E. Who is the Proper Claimant?
The initial small claims action was brought in the name Gunn & Sharib Associates Inc., doing business as the Doo Wop Shoppe. This was the entity that entered into the written agreement with the producers. The action to enforce the claim for compensation was brought in the name of the Doo Wop Shoppe Ltd., a different legal entity. Although John Gunn appears to have been a principal of both corporations, there was no proof submitted that Gunn and Sharib had ever assigned their claim to the Doo Wop Shoppe Ltd. or that it was a successor entity. No evidence was submitted as to when the Doo Wop Shoppe Ltd. was incorporated. The compensation check was made payable to the Doo Wop Shoppe without any designation as either a doing business as or a separate corporation. This was done as a result of John Gunn signing the litigant’s acknowledgment instructing that the check be issued by the producers in that manner. On its face, the current action would have to be dismissed, as it was not brought by a proper party.
Conclusion
As stated above, the court has determined that the contract that the parties sign in order to have their case heard on the “People’s Court” does not qualify as an arbitration agreement, primarily because all the parties are compensated by the producer for participating in the show and not based entirely on the merits of their case. It may be some form of alternative dispute resolution, but it is not arbitration. Just as Joe Boyd was required to honor the deal hé made with Mr. Applegate when he became Joe Hardy (Damn Yankees by Douglas Wallop) so, too, must the litigants who voluntarily discontinue their small claims cases so as to appear on the “People’s Court” be bound by the terms of the agreement they sign. The rules are what the producers say they are. One rule requires the participants to accept the decision of the arbitrator without ap *920 peal or challenge. Another rule allows the producer to lower the recovery to nothing for a recalcitrant participant. In light of these clauses, the claimant is fortunate he has received any compensation from the producers, since they could have awarded him nothing pursuant to the terms of the Agreement for his noncompliance with their requests. The Agreement is not so unfair or unconscionable on its face to either shock the conscience of the court or to violate public policy. It is apparent that parties that opt to abandon the court system for an appearance on the “People’s Court” are motivated by factors other than resolution of the underlying claim. If a litigant does not like the rules, he or she should not play the game; they should not come to the very system they have forsaken to seek a redress of their grievance.
As much as the court would like to leave the parties to their own devices and rely on the old legal maxim, “you made your bed so sleep in it”, since the claimant herein voluntarily chose to abandon the court system, to do so would not be fair. If the claimant had worded his suit as one seeking to have the producers abide by the terms of the Agreement and pay him what he had been awarded rather than one for “defective services rendered”, the court could have determined if he was entitled to $900 plus the refrigerator, as he originally alleged. If asked to resolve that dispute, the court would uphold the decision of Koch. Claimant would be entitled to $900, the defendant $50 and the claimant would return the refrigerator to T&B.
The claimant did not seek that relief; rather, he has, at trial, presented to the court the issue of whether or not this small claims action has been settled for $1,000 or $750. How this qualifies as “defective services” rendered is also beyond the ken of this court. Since the Agreement and Rules permit the producers to change the award if a litigant is uncooperative, the claimant cannot assert a cause of action against the producer once a check is issued and cashed. Claimant, if he believed he was entitled to more money, should have rejected the $750 check and sued for $900 under the terms of the contract. By accepting the check the claimant was acceding to the terms of the Agreement which allowed the producers to pay a lesser amount if the arbitrator’s judgment was not complied with. Claimant is restricted to the $750 that he has received. Since the producers do not want the refrigerator, and neither does T&B, and the producers can determine the terms of the judgment, and they have agreed to let the claimant keep it, it is now his property.
*921 Parenthetically, the court might suggest to the defendant producers that rather than view this incident as an unnecessary and annoying experience, they should approach their creative team to create an appeals court program. Litigants dissatisfied with Koch’s rulings could argue their cases before a three-Judge panel and be awarded “double or nothing”. It could be called the “Banana Tribunal”, the court with appeal. To make the show even more entertaining, the litigants would have to choose the three-Judge panel from a group of nine celebrity Judges sitting in a tic-tac-dough board.
Finally, on a more serious note, the court is concerned that the agreement the litigants on the People’s Court sign is apparently not given to the participants any time in advance of appearing for the taping of the program so as to scrutinize its terms and weigh the alternatives of appearing or not appearing on television. It also does not advise the participants as to what the legal implications are of opting out of the Small Claims Court system, nor does it alert them that they should have the agreement reviewed by an attorney, as they may be forfeiting certain rights by appearing on television. The producers might want to consider some changes in their current procedures.
Judgment for defendant on the merits. No cause of action exists against the producers. The claim has been paid in full. Claimant can only recover $750. No further action can be maintained by either Gunn & Sharib Associates Inc., the Doo Wop Shoppe Ltd., the Doo Wop Shoppe, or John Gunn. This litigation is concluded.