*364 OPINION OF THE COURT
Norman C. Ryp, J.
A. Issue
Whether alleged statements by the “Presiding Judge” in a virtual “arbitration,” a videotaped episode of “The People’s Court,” presided by “Judge” Edward I. Koch, is an arbitration under CPLR article 75? If so, is the “Judge” subject to arbitral immunity, privilege(s), absolute or qualified?. Socratic issues of first impression for the 21st century!
B. Facts and Procedural History
Defendant, Edward I. Koch, moves under CPLR 3212 for summary judgment dismissing the complaint. Claimant (also known as plaintiff), Idris Kabia, alleges he was libeled and slandered as a “kidnapper” of his then infant son in his native country (Sierra Leone) Africa on national television. On January 19, 1999, claimant sued his son, Ahmed Kabia, for $2,000 (originally $200) for alleged failure to return property (i.e., photos of them together) in the Small Claims Part (index No. 363 NSC 99), with an initial hearing scheduled for February 24, 1999. Between January 19 and February 9, 1999, both were contacted by Ralph Edwards Productions (Producer) and afforded the opportunity to resolve their dispute on “The People’s Court” then presided over by former New York City Mayor, Chief Magistrate and now “Arbitrator” Edward I. Koch (also known as Arbitrator) rather than in this court. They were each sent an agreement to arbitrate (A/A). Producer also requested that claimant, who did, write a statement, dated February 2, 1999, justifying his version, of the facts and requested relief.
Thereafter, on February 9, 1999, both claimant and defendant signed the A/A with Ralph Edwards Productions, doing business as “The People’s Court” (hereinafter The People’s Court), at The People’s Court studios just prior to the scheduled videotaping. Under the A/A, any award by the Arbitrator (defendant herein) is paid to the winning party only by The People’s Court, not the losing party. If no award is made, both parties are each paid $250 (as herein) from a fund provided by the Producer. The A/A includes three paragraphs (if 7 [a], [b]; 8) releasing the Producer and Arbitrator (if 8), including for “statements during * * * the arbitration which plaintiff and/or defendant * * * feel rightly or wrongly to be derogatory, defamatory or in some other way injurious to themselves.” On February 9, 1999, claimant also signed a stipulation of settle *365 ment “dismissing” (actually discontinuing) the underlying action (index No. 363 NSC 99) with prejudice. Attached to the A/A were “The People’s Court Rules” including “The Judgment” (]f 3) which exclaimed that the Arbitrator’s decision shall be “FINAL AND BINDING.”
Thereafter, on February 9, 1999, after the parties signed the above documents, the “arbitration” proceeding occurred. At the end of the “arbitration proceeding,” the Arbitrator defendant found in favor of defendant son therein and awarded claimant-plaintiff no money. Immediately following the “arbitration” proceeding and before claimant left the Producer’s studio, claimant signed a “Litigant Acknowledgment” of his entitlement to $250 from the Producer. Subsequently, on February 22, 1999, Producer’s check (No. 46846, dated Feb. 22, 1999) in the sum of $250 payable to claimant was received, endorsed and deposited by claimant-plaintiff on February 27, 1999. During March 1999, an edited videotape version of subject videotape was broadcast on national network television.
On April 2, 1999, claimant filed subject action (index No. 2386 NSC 99) against defendant Edward Koch, alleging a claim to “defame, liable [sic], slander.”
At the motional hearing, the only contested triable factual issue was whether defendant “Arbitrator” Edward I. Koch uttered the words “kidnapped” or “kidnapper” or a word(s) of similar import, claimed by plaintiff and required by CPLR 3016 (a). The court requested and received, along with claimant, unedited and edited videotaped versions, with transcript(s) of the subject televised program. After televiewing, while the court did not see or hear the controverted words, the court assumes such utterance for the purpose of this CPLR 3212 summary judgment motion herein, since evidence is construed most favorable to claimant, motional opponent. (Siegel, NY Prac § 281, at 442 [3d ed 1999].)
C, Applicable Law
This court’s mission is to do substantial justice between the parties according to the rules of substantive law (CCA 1804) in fairness to plaintiff, whose birth language was not English. Defendant’s CPLR 3211 motion was converted to a CPLR 3212 motion for summary judgment, which the parties were so advised and did not object at the motional hearing. (Levine v American Fed. Group, 180 AD2d 575 [1st Dept 1992]; see also, Siegel, NY Prac § 270, at 429-430 [3d ed 1999].)
The A/A, which claimant-plaintiff duly executed, respectively provides, as follows:
*366 “7(a) Plaintiff and Defendant hereby release and forever discharge the Arbitrator, the Producer, the Producer’s officers, agents, licensees and employees, and their respective heirs, executors, administrators, legal successors and assigns, and each of them (hereinafter referred to as the ‘Released Parties’) from any and all claims, demands and actions of every kind and nature whatever, whether or not now known or suspected, which plaintiff or defendant now has or may hereafter have against the Released Parties, or any of them, based upon or related to any agreement, obligation, claim or matter whatever occurring or existing at any time up to and including the date hereof (including but not limited to, the Agreement, the Claims, the arbitration of the Claims, and the recording and editing of the arbitration); and excepting only Producer’s obligation to pay Plaintiff and Defendant in accordance with Paragraph 5 above.
“(b) It is the intention of the Parties that this Agreement shall be a full and final satisfaction and general release of each and every matter set forth above in Paragraph 7(a). Plaintiff and Defendant each acknowledges that he is aware that he or his attorneys may hereafter discover claims or facts in addition to or different from those which he now knows or believes to be true with respect to the subject matter of this Agreement or the Released Parties, but that it is his intention hereby to fully settle and release all disputes, and differences, known or unknown, suspected and unsuspected, which do now exist or may exist between Plaintiff and the Released Parties and/or between Defendant and the Released Parties. In furtherance of such intention, the release herein given to the Released Parties shall be a full and complete general release, notwithstanding the discovery of any such additional or different claims or facts.
“8. Plaintiff and Defendant understand that (as is the case in any litigation or arbitration) the parties, witnesses or even, perhaps, the Arbitrator may make statements during or immediately following the arbitration which Plaintiff and/or Defendant might feel rightly or wrongly to be derogatory, defamatory, or in some other way injurious to themselves or others. Further, if your case is selected to *367 air as part of ‘THE People’s COURT’ (‘Series’), the Series hosts, guests and/or members of the home viewing audience (by phone, fax, E mail, Computer Bulletin Board or by any other method now known or hereafter devised) may also make statements broadcast as part of the Series which Plaintiff and/or Defendant might feel rightly or wrongly to be derogatory, defamatory, or in some other way injurious to themselves or others. Any and all such statements and any injuries allegedly caused thereby are hereby specifically included within the matters released under Paragraphs 6 and 7 above.
“9. Plaintiff and Defendant each warrant and represent to the other and to producer that each has the sole right and authority to release the respective released matters described above in Paragraphs 6 and 7, and that they have not heretofore assigned or transferred to any person whomsoever and such released matter or any part or portion thereof.” (DX-B, at 4-5.)
While persons selected to participate in The People’s Court sign the A/A it has been found that this process is not truly legal arbitration, since, inter alia, the prevailing litigant was compensated by the show’s producer, not the losing litigant, subject to judicial review under CPLR article 75 or common law. (See, Doo Wop Shoppe v Ralph Edwards Prods., 180 Misc 2d 907, 913 [Civ Ct, Richmond County 1998]; Alexander, 1999 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C7501:1 et seq., 2000 Pocket Part, at 5-6; see also, B.M. v D.L., NYLJ, Mar. 20, 2000, at 30, cols 4-6 [Earn Ct, Kings County 2000, Sunshine, J.] [involving a similar “Judge Judy Arbitration Agreement” to resolve custody and visitation issues].)
Even if this action were subject to CPLR article 75, it must be brought as a special proceeding in the Supreme Court of the State of New York, if the recovery sought is $25,000 or more (CPLR 7502 [a]) or as a plenary action in the Civil Court of the City of New York if the recovery sought is between $10,000 and $24,999 (CCA 206 [b]). If the recovery sought is $10,000 or less, then the action is heard under CPLR 3405. (CCA 206 [c]; 22 NYCRR 28.1-28.16.)
However, under the clear and unequivocal language of the A/A (¶ 4), the parties consented to The People’s Court Arbitrator’s (i.e., former New York City Mayor Edward I. Koch) award *368 as being “final and. binding.” However, the action herein does not dispute the “Judge’s” or “Arbitrator’s” award or decision, but rather the alleged statements accusing claimant of being a “kidnapper” of his then infant son in Sierra Leone.
1. “People’s Court” — Arbitration Proceeding under CPLR Article 75? Yes!
Through the 19th century, courts resented private efforts to “dust” them of their jurisdiction with numerous Judge-made rules that made it difficult to arbitrate. (See, Meacham v Jamestown, F.&C.R. Co., 211 NY 346 [1914].) Civil Practice Act §§ 1448 through 1450 (1920) and its successor, CPLR article 75 (which governs procedure for judicial enforcement of private agreements to arbitrate and regulates part of the arbitration hearing itself), is a modern version of a 1920 comprehensive plan in New York to overcome judicial hostility to arbitration: (See, 17th Ann Report of NY Jud Council, at 217, 231-232 [1951].) These above provisions (Civ Prac Act §§ 1448-1450; CPLR 7501-7514; Brower v Gateway 2000, 246 AD2d 246 [1st Dept 1998]) created a friendly procedural environment in the courts to encourage arbitration. (Fed Rules Civ Pro rule 81; Federal Arbitration Act [9 USC § 1 et seq.].)
Black’s Law Dictionary 105 (6th ed 1990) defines arbitration as “A process of dispute resolution in which a neutral third party (arbitrator) renders a decision after a hearing at which both parties have an opportunity to be heard.” Arbitration is a form of alternative dispute resolution almost wholly independent of the court system. It requires a written agreement to submit a present or future controversy to arbitration and that the parties “expressly” and “unequivocally” enter into such agreement. (CPLR 7501; Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C7501:3, at 290; Matter of Marlene Indus. Corp. [Carnac Textiles], 45 NY2d 327 [1978].) Arbitration is a legally legitimate means to resolve disputes because it neither unlawfully deprives a party of access to the courts nor divests them of the constitutional right to trial by jury as these rights are waivable and the agreement to arbitrate waives them. (Berkovitz v Arbib & Houlberg, 230 NY 261 [1921]; see, Note, Contracts: Arbitration: Constitutionality of New York Statute Upheld, 6 Cornell LQ 432 [1921]; Note, Arbitration — When is a Dispute Arbitrable — Jurisdiction of Court and Arbitrator, 23 Fordham L Rev 352 [1954].)
Both parties to the February 9, 1999 People’s Court proceeding, from which this case derives, agreed, in writing, to arbitrate their dispute before an agreed-upon neutral arbitra *369 tor, former New York City Mayor and Chief Magistrate, Edward I. Koch. The agreement to arbitrate before the Honorable Edward I. Koch of The People’s Court is subject to CPLR article 75. It is separate and distinct from other types of arbitration such as Small Claims arbitration (where parties in Small Claims Court agree to have volunteer attorneys serve as Referees to hear and report, popularly called “arbitrators”). This type of arbitration is covered by CPLR 3405 (“Arbitration of certain claims”) rather than CPLR article 75. Other distinct types of arbitration include: court annexed arbitration and alternative dispute resolution arbitration, which are subject to CPLR 3405, as opposed to CPLR article 75 arbitration or “No-Fault” arbitration (Insurance Law §§ 5101-5108). Neither party to the February 9, 1999 People’s Court proceeding disputed that it was an arbitration as per article 75, nor does the plaintiff-claimant dispute such at this time.
To the contrary, as noted above, Judge Philip S. Straniere in Doo Wop Shoppe v Ralph Edwards Prods. (180 Misc 2d 907, 913 [Civ Ct, Richmond County 1998], supra), using the above Black’s definition of “arbitration,” found that “[t]he ‘People’s Court’ is not a form of arbitration recognized in New York State and the rights and protections afforded persons who engage in arbitration are not available to participants in that program.” The court therein found that A/A had “all the trappings of an arbitration contract” except payment of an award by the losing litigant but let the “arbitrator’s” award stand. This court respectfully disagrees with such finding so that The People’s Court proceeding of February 9, 1999 herein was an “arbitration proceeding” in accordance with CPLR article 75 and New York State public policy, which encourages arbitration. (See, Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C7501:3, at 290.)
Judge Straniere, in Doo Wop (supra), reasoned that The People’s Court “Arbitration” is not a form of arbitration recognized in New York State because the ultimate award or “judgment” by the arbitrator was paid by a third party (The People’s Court), and not the losing party; therefore, the proceeding failed to be a true arbitration under CPLR article 75. Nowhere in CPLR article 75, the accompanying McKinney’s Practice Commentaries, Black’s Law Dictionary or case law does it state that an arbitration agreed to by both parties, in writing, fails to be an arbitration under CPLR article 75 because the award/judgment is paid by a third party. Second, Judge Straniere suggested that parties submitting to arbitra *370 tion by The People’s Court are not afforded the rights and protections of parties to an article 75 arbitration. No language in the A/A distinguishes The People’s Court from any other article 75 proceeding in New York State. Rather The People’s Court arbitration is an article 75 arbitration and subject to its rules and procedures. Alexander, Practice Commentaries (McKinney’s Cons Laws of NY, Book 7B, CPLR C7511:2, at 771-772), which detail the grounds and procedures for vacating or modifying an arbitration award, state that “[consistent with the public policy in favor of arbitration * * * the grounds specified in CPLR 7511 for vacating or modifying an arbitration award * * * are narrowly applied” and “Courts are reluctant to disturb the decisions of arbitrators lest the value of this method of resolving controversies be undermined.” (Matter of Goldfinger v Lisker, 68 NY2d 225, 230 [1986].) Such a narrow review bolsters public policy’s favoring view of arbitration as an economical and expeditious alternative to judicial dispute resolution (Matter of Weinrott [Carp], 32 NY2d 190, 199 [1973]), and in no way “sacrifices] any right [the parties] might have to redress of the courts should they be dissatisfied with the outcome of the ‘arbitration’.” (Doo Wop Shoppe v Ralph Edwards Prods., supra, at 913.) Although “Final and Binding” is seemingly exclusionary language, and noting arbitrator’s awards are not generally reviewable, such language and policy do not unilaterally “sacrifice any right [the parties] have to redress of the courts,” but simply limits parties’ redress under CPLR 7511. (See also, Scott v Dale Carpet Cleaning, 120 Misc 2d 118 [Civ Ct, NY County 1983].) Such limits are the essence of arbitration and allow for its economical and expeditious resolution of disputes.
2. Defamation: Slander
Defamation actions have been tried in this People’s Court before. (See, Terillo v New York Newsday, 137 Misc 2d 65 [Civ Ct, NY County 1987].) As noted above, for CPLR 3212 motional purposes, it is assumed, without conceding, though it is not visible or audible on the videotape or transcript as required by CPLR 3016 (a), that the below words were uttered by the Arbitrator.
It is uncontroverted that one who has “kidnapped” or is a “kidnapper,” in 1990 in Sierra Leone, Africa, even his own son, under Penal Law article 135, may or may not be guilty of a felony or serious crime in New York. This assumes such is prosecuted within five years (CPL 30.10 [2] [b]) after commission. .Such may be a class E felony (custodial interference, first *371 degree — Penal Law § 135.50) or a class A misdemeanor (custodial interference, second degree — Penal Law § 135.45), since it involved a parent, father claimant, as the alleged perpetrator and the infant son as his victim. Whether “kidnapping” one’s son was or is a “serious crime” in Sierra Leone or beyond any Statute of Limitations is unknown. If a “serious crime,” such a statement published on national television may be slanderous, per se, and it is unnecessary to allege special damages. (James v Gannett Co., 40 NY2d 415 [1976], rearg denied 40 NY2d 990 [1976].)
3. “Judicial Proceeding”? — Arbitral Immunity Privileges— Absolute or Qualified? Absolute!
Although not Judges, arbitrators exercise judicial functions and are protected from civil liability for acts done in the exercise of judicial functions whether general or special damages are sought. (Rubenstein v Otterbourg, 78 Misc 2d 376 [Civ Ct, NY County 1973].) Under this doctrine of arbitral immunity, arbitrators in contractually agreed-upon arbitration proceedings are absolutely immune from liability for all acts within the scope of the arbitral process (Austern v Chicago Bd. Options Exch., 898 F2d 882 [2d Cir 1990], cert denied 498 US 850 [1990]; Wally v General Arbitration Council of Textile & Apparel Indus., 165 Misc 2d 896 [Sup Ct, NY County 1995]; 5 NY Jur 2d, Arbitration and Award, § 131, at 269; 43A NY Jur 2d, Defamation and Privacy, § 152, at 415). Such acts include questions from “Judge-Arbitrator” Edward I. Koch to ascertain factual background to determine issues and their resolution.
In addition, an arbitration association cannot be held liable for the actions of arbitrators who enjoy judicial immunity from civil liability for acts complained of since the doctrine of arbitral immunity protects not only arbitrators but their organizations from civil liability for all acts performed within their arbitral capacity. (Wally v General Arbitration Council of Textile & Apparel Indus., supra.)
D. Conclusion
For the foregoing reasons, claimant’s complaint is dismissed, with prejudice.