Farran Tozer BROWN, Plaintiff,

v.

CUSHMAN & WAKEFIELD, INC. and Cushman & Wakefield of New York, Inc. Defendants.

No. 01Civ.6637RMBAJP.

United States District Court, S.D. New York.

Dec. 6, 2002.

Jeffrey L. Liddle, Michael Evan Grenert, Liddle & Robinson, LLP, New York City, for Plaintiff.

Rene Johnson, Morgan Lewis & Bockius LLP, New York City, for Defendants.

### DECISION AND ORDER

BERMAN, District Judge.

### I. Introduction

On or about July 20, 2001, Plaintiff Farran Tozer Brown ("Plaintiff") filed this

action against Defendants Cushman & Wakefield, Inc. ("C & W") and Cushman & Wakefield of New York, Inc. ("C & W–NY") (collectively, "Defendants") alleging that the Defendants: (i) breached Plaintiff's written employment contract, dated May 3, 1999, by, among other things, prematurely terminating her employment; and (ii) discriminated against Plaintiff on the basis of "sex, pregnancy and childbirth" by terminating her employment while she was on maternity leave in violation of Title VII, 42 U.S.C. § 2000e *et. seq.* (1994) ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et. seq.*, as amended ("NYSHRL"), and the New York City Human Rights Law, N.Y. Admin. Code § 8–101 *et. seq.* ("NYCHRL").[1] On or about October 11, 2001, Defendants filed an amended answer and counterclaim seeking, among other things, repayment of payments erroneously made to Plaintiff while she was on (unpaid) maternity leave.

On March 1, 2002, Defendants moved for partial summary judgment ("Defendants' Motion") under Rule 56(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.").[2] On or about April 4, 2002, Plaintiff filed an opposition to Defendants' Motion ("Plaintiff's Opposition"). Defendant replied on April 26, 2002.

1. Plaintiff was pregnant at the time she signed her employment agreement and began working for Defendants in May 1999. Plaintiff's & Defendants' Rule 56.1 Statements of Undisputed Facts, ¶ 43. She did not advise Defendants of her pregnancy and need for maternity leave until July 1999. *Id.* ¶ 44. She was on maternity leave from October 1999 to January 2000. *Id.* ¶ 52.

2. Defendants did not move for summary judgment with respect to Plaintiff's pregnancy discrimination claim under Title VII, the NYSHRL and NYCHRL. Plaintiff did not file a cross motion.

On or about July 29, 2002, United States Magistrate Judge Andrew J. Peck, to whom this matter had been referred, issued a report and recommendation ("Report"), recommending that Defendants' Motion be granted in part and denied in part.[3]

The Report advised the parties that "[p]ursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections." *Id.* at 55. On August 26, 2002, Plaintiff filed objections to the Report ("Plaintiff's Objections") dealing principally with the denial of Plaintiff's jury request and the repayment of erroneous payments made to Plaintiff while she was on maternity leave. Defendants filed a letter, dated August 26, 2002 ("Defendants' Letter of August 26, 2002"), stating that "Defendants agree with and fully endorse Magistrate Judge Peck's Report and have no objections. . . ." Defendants' Letter of August 26, 2002 at 1. On September 10, 2002, Plaintiff filed a response to Defendants' Letter of August 26, 2002 ("Plaintiff's Response"), and on that same date, Defendants filed a response to Plaintiff's Objections ("Defendants' Response"). **For the reasons set forth below, the Report is adopted in its entirety.**

3. The Report recommended Defendants' Motion be: (i) granted as to Plaintiff's contract claim for two years' compensation since Plaintiff "was an employee at will and not employed for a term of two years"; (ii) denied as to Plaintiff's contract claim for unpaid commissions; (iii) granted as to Defendants' counterclaim for erroneous payments; (iv) denied as to Plaintiff's sex discrimination claims "since the claims significantly overlap with [Plaintiff's] pregnancy discrimination claims, on which C & W has not moved for summary judgment"; (v) denied as to C & W–NY; and (vi) granted as to Defendants' application to strike Plaintiff's jury trial request. Report at 54.

## II.  Standard of Review

■  A district court evaluating a Magistrate's report may adopt those portions of the report to which no "specific, written objection" is made, as long as those sections are not clearly erroneous. Fed. R.Civ.P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Greene v. WCI Holdings Corp.*, 956 F.Supp. 509, 513 (S.D.N.Y.1997). "Where a party makes a 'specific written objection' within '[ten] days after being served with a copy of the [magistrate judge's] recommended disposition,' however, the district court is required to make a de novo determination regarding those parts of the report." *Cespedes v. Coughlin*, 956 F.Supp. 454, 463 (S.D.N.Y.1997) (quoting *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate. *See DeLuca v. Lord*, 858 F.Supp. 1330, 1345 (S.D.N.Y.1994); *Walker v. Hood*, 679 F.Supp. 372, 374 (S.D.N.Y.1988).

## III.  Analysis

The facts as set forth in the Report are incorporated herein by reference.

The Court has conducted a *de novo* review of the Report, the record, applicable legal authorities, along with Plaintiff's Objections and Defendants' Letter of August 26, 2002, as well as each parties' subsequent correspondence, and concludes that Magistrate Peck's legal and factual determinations are supported by the record and the law in all material respects.[4]  Neither

parties' objections or other submissions provide a legal basis for departing from the Report's recommendations.

### Plaintiff's Waiver of a Jury Trial

The Magistrate concluded that Plaintiff's May 3, 1999 employment agreement, which provided, in part, that: "C & W and Employee shall and hereby do waive a trial by jury in any action, proceeding or counterclaim brought or asserted by either of the parties hereto against the other on **any matters whatsoever arising out of this Agreement**," Defendants' Rule 56.1 Statement of Undisputed Facts Supporting Documents ("Defendant's Ex."), Ex. 19 ¶ 10 (emphasis added), constituted a "contractual waiver of a jury trial [that] applies to all of [Plaintiff's] claims, including those arising under federal and state discrimination statutes." Report at 43.  Plaintiff argues that "the express language" of this clause "waives a jury trial for her contract claims, but does *not* waive a jury trial for her discrimination claims." Plaintiff's Objections at 2 (emphasis in original).  Defendants respond that "any dispute arising out of the employment relationship, such as Plaintiff's discrimination claims, can be said to have arisen out of the Agreement governing that relationship." Defendant's Response at 5–6.

■  Jury trial waivers are enforced if they are knowing and voluntary. Report at 41; *Morgan Guar. Trust Co. of N.Y. v. Crane*, 36 F.Supp.2d 602, 603 (S.D.N.Y. 1999); *National Equipment Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977).[5]  Magistrate Peck determined that

---

4.  As to any portions of the Report to which no objections have been made, the Court concludes that the Report is not clearly erroneous. *See Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991).  Any objections which are not specifically discussed in this Order have been considered and rejected.

5.  To determine whether a waiver is knowing and voluntary, courts assess: "(1) the negotiability of contract terms and negotiations between the parties concerning the waiver provision; (2) the conspicuousness of the waiver provision in the contract; (3) the relative bargaining power of the parties; and (4) the business acumen of the party opposing the

the jury waiver here was a conspicuous part of Plaintiff's employment agreement and that Plaintiff, a Harvard M.B.A. who had worked as an investment banker before becoming a commercial real estate broker, could "have negotiated about the clause if she tried." Report at 42. The Magistrate also rejected Plaintiff's argument that she did not read the employment agreement before signing it as having "no merit." *Id. See, e.g., Tuskey v. Volt Info. Sci., Inc.*, 2001 WL 873204, at *3–4 (S.D.N.Y. Aug. 3, 2001) ("parties are 'conclusively' bound by the contracts they sign whether or not the party has read the contract so long as there is no fraud, duress or some other wrongful act of the other party"); *Smith v. Lehman Bros., Inc.*, 1996 WL 383232, at *1 (S.D.N.Y. July 8, 1996).

■ Magistrate Peck also concluded correctly that the jury trial waiver applied to all of Plaintiff's employment claims "including those arising under federal and state discrimination statutes." Report at 43. For one thing, the waiver clause was extremely broad and included "any matters whatsoever arising out of this Agreement." Thus, it should not be construed to refer only to breach of contract claims. *Id; see also Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir.1993) (" 'arising out of' reaches all disputes ... whether or not they implicate interpretation or performance of the contract per se"); *Gateson v. ASLK–Bank, N.V.*, 1995 WL 387720, at *4–5 (S.D.N.Y. June 29, 1995) (Title VII, Age Discrimination Employment Act ("ADEA"), and NYSHRL claims held arbitrable where allegations against defendants "arise out of [their] actions ... in connection with Plaintiff's Employment Agreement," which stated that "[a]ny controversy arising out of or relating to this

Agreement or the breach hereof shall be settled by arbitration").

Second, Plaintiff's "employment had its origin or genesis in the [employment] contract." *Hammaker v. Brown & Brown*, 214 F.Supp.2d 575, 578 (E.D.Va.2002) (ADEA claim held to be within the scope of a contract clause which provided for waiver of "any right either [party] may have to a trial by jury with respect to any litigation related to or arising out of, under or in conjunction with this Agreement") (internal quotations and citations omitted); *see also Arakawa v. Japan Network Group*, 56 F.Supp.2d 349, 352–53 (S.D.N.Y. 1999) (arbitration clause in employee handbook which stated that "any and all disputes and claims which arise out of or relate to [plaintiff's] employment" covered Plaintiff's sexual harassment, wrongful discharge and discrimination claims because they "ar[ose] out of or relate[d] to her employment"); *Cherry v. Wertheim Schroder and Co.*, 868 F.Supp. 830, 834 (D.S.C. 1994).

### *Defendant's Counterclaim for Repayment*

■ Magistrate Peck properly concluded that "C & W ... is entitled to return of the bi-weekly payments erroneously paid to [Plaintiff]" while on maternity leave. Report at 53. Plaintiff argues that because C & W "did not have a standard policy that applied to non-salaried brokers" and because she "never signed any modification to her employment contract," she was entitled to receive the payments that she, in fact, received during her maternity leave. Plaintiff's Objections at 6–7. Defendants respond that "Plaintiff cannot dispute that the ultimate decision was consistent with the language of her Agreement and did not represent a modification to that Agreement" and that "Plaintiff was

waiver." *Morgan Guar.*, 36 F.Supp.2d at 603–04.

well aware at the time she went out on maternity leave that it was the intent of [her supervisor] and C & W that Plaintiff's leave be unpaid." Defendants' Response at 7–8.

As the Report observed, Plaintiff "recognizes and acknowledges that she agreed to take unpaid maternity leave pursuant to the oral arrangements she made with C & W, which were confirmed by C & W in writing." Report at 53; *see* Defendants' Ex. 51 (Plaintiff's deposition transcript excerpt) at 317 ("**I understood that when I went on leave, that I was going to be taking an unpaid leave**") (emphasis added); *see also* Defendant's Ex. 50 (August 16, 1999 memo to Plaintiff) ("As per your Brokerage agreement, your draw will be discontinued for the length of your FMLA disability leave.").

### *Plaintiff's Contract Claim for Commissions*

Plaintiff states that "the Report apparently recommends granting summary judgment to [her] on her Labor Law claim to the extent it is based on her claim that C & W breached her contract by failing to pay her bi-weekly payments [$5,769.23] during her contractual notice period from January 10–24, 2000." Plaintiff's Objections at 8. Plaintiff did not move for summary judgment on this issue and the Report does not recommend that summary judgment be granted for either party on this breach of contract claim.[6] *See* Report at 54. The objection is denied without prejudice and may be raised (again) in connection with the parties' pre-trial order.

### IV.   Conclusion and Order

For the reasons stated herein and therein, the Court adopts the Report [42] in its entirety. Defendants' Motion for partial summary judgment is granted with re-

---

spect to Plaintiff's breach of contract claim for two years' compensation and denied as to Plaintiff's breach of contract claim for commissions; denied with respect to Plaintiff's sex discrimination claims; Defendants' Motion for summary judgment on its counterclaim is granted; Defendants' Motion to dismiss C & W–NY is denied and Defendants' Motion to strike Plaintiff's jury demand is granted.

The parties are directed to participate in a trial scheduling/settlement conference on December 27, 2002 at 10 a.m., in Courtroom 706 of the United States Courthouse, 40 Centre Street, New York, New York. **The parties are directed to engage in good faith settlement negotiations prior to the conference.**

---

6.  Nor did Plaintiff seek clarification from

Magistrate Peck with respect to this claim.