Lori A. VALDES, Plaintiff,

v.

SWIFT TRANSPORTATION CO., INC., Defendant.

No. 02 Civ. 10021(DC).

United States District Court, S.D. New York.

Nov. 25, 2003.

Dan Getman, Esq., New Paltz, NY, for Plaintiff.

Littler Mendelson, P.C. by Davis S. Warner, Esq., New York City, for Defendant.

### MEMORANDUM DECISION

CHIN, District Judge.

In this employment case, plaintiff Lori A. Valdes alleges that her employer sexually harassed and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, and the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* Defendant Swift Transportation Co., Inc. ("Swift") moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), or, in the alternative, to stay this action and compel arbitration, pursuant to New York law. Because plaintiff twice executed agreements to arbitrate "all disputes and claims" arising out of her employment with defendant, defendant's motion to dismiss is granted. This action is dismissed, without prejudice to reinstatement in the event further proceedings are necessary following the arbitration.

### BACKGROUND

Defendant, an interstate motor carrier, hired plaintiff as a driver in December 1999. (Compl. ¶¶ 5, 7; DiMarco Decl., Exh. C, ¶ 4). Prior to be being hired, while in New York, plaintiff completed and signed two employment applications—one on September 13, 1999 and another on

November 30, 1999—which included identical arbitration clauses. (DiMarco Decl., Exh. C, ¶ 3 and exh. 1 thereto; DiMarco Decl., Exh. D, ¶ 4 and exh. 1 thereto) ("arbitration clause"). The arbitration clause reads as follows:

> I hereby agree to submit to binding arbitration all disputes and claims arising out of the submission of this application. I further agree, in the event that I am offered employment by the company, as a condition to that employment, all disputes that cannot be resolved by informal internal resolution which might arise out of my employment with the company, whether during or after that employment, will be submitted to binding arbitration in lieu of any Federal or State investigative, administrative or legal proceeding. I agree that such arbitration shall be conducted under the rules of the American Arbitration Association.

*Id.*

Plaintiff alleges that, during her training for employment with defendant, she was forced to receive instruction from a male employee who "would regularly be nude" and "at times wore certain sexual devices and often had an erection while driving." (Compl.¶¶ 8, 10–11, 13). After plaintiff complained about the employee's behavior, Swift retaliated against her and ultimately terminated her in or about February 2000. (Compl.¶ 19).

On December 19, 2002, plaintiff filed this action alleging sexual harassment and retaliation in violation of Title VII and the New York State Human Rights Law. Plaintiff seeks damages and declaratory and equitable relief.

**1.** Although defendant moves to dismiss, in part, under Fed.R.Civ.P. 12(b)(1), defendant does not argue specifically that subject matter

## *DISCUSSION*

Swift moves to dismiss pursuant to Fed. R.Civ.P. 12(b)(1)[1] and 12(b)(6) or, alternatively, to stay this action and compel arbitration.

On a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996). The issue is not whether the plaintiff will ultimately prevail, but whether she is entitled to offer evidence to support her claim. *Id.* Dismissal is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### A. *Choice of Law*

As a threshold matter, although neither party has squarely addressed the question, I consider what law governs arbitrability. If a dispute is covered by the Federal Arbitration Act (the "FAA"), 1 U.S.C. § 1 *et seq.*, federal law applies to all questions of "interpretation, construction, validity, revocability, and enforceability." *In re Salomon Inc. Shareholders' Derivative Litigation*, 68 F.3d 554, 559 (2d Cir. 1995) (citing *Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1211 (2d Cir.19721)). State arbitration law governs, however, if the FAA does not apply. *See Shearson Hayden Stone, Inc. v. Liang*, 493 F.Supp. 104, 106 (N.D.Ill.1980).

jurisdiction is lacking. As this case is brought under Title VII, this Court has subject matter jurisdiction.

In cases brought under federal question jurisdiction where the FAA does not apply, and the arbitration agreement contains no choice of law provision, federal common law choice of law rules apply. *See Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 629 F.2d 786, 794–95 (2d Cir.1980). The federal common law choice of law rule dictates applying the law of the jurisdiction having the "greatest interest in the litigation." *In re Koreag, Controle et Revision S.A.,* 961 F.2d 341, 350 (2d Cir.1992).

### 1. *FAA Exemption for Transportation Workers*

Plaintiff argues that the arbitration clause in the two identical employment applications she signed cannot be enforced because the FAA and its arbitration enforcement mechanisms do not apply to her as a transportation worker. Defendant does not dispute whether plaintiff would be exempt from the FAA as a transportation worker, but contends instead that, regardless of the FAA's applicability, the arbitration agreement may still be enforced. I hold that any inapplicability of the FAA would not preclude enforcing the arbitration agreement under state law.

#### a. *FAA's Applicability*

Section 1 of the FAA provides in pertinent part that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." Transportation workers' employment contracts, like that at issue in this case, have been held to be exempt from the FAA's scope, pursuant to section 1. *See Circuit City Stores v. Adams,* 532 U.S. 105, 119, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001); *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1069 (2d Cir.1972) (limiting Section 1 exclusion to workers in the "transportation industry" or those "in, or closely related to the actual movement of goods in interstate commerce"); *Arakawa v. Japan Network Group,* 56 F.Supp.2d 349, 353 (S.D.N.Y.1999) (same); *Jamaica Buses, Inc. v. Transport Workers' Union–AFL CIO, Local 100,* No. 02–CV–2533 (SJ), 2003 WL 1621026, at \*3 (E.D.N.Y. Mar. 26, 2003) (same); *Rosen v. Transx Ltd.,* 816 F.Supp. 1364, 1371 (D.Minn.1993) (excluding truck driver from FAA); *Central States, Southeast & Southwest Areas Pension Fund v. Tank Transp., Inc.,* 779 F.Supp. 947, 949 (N.D.Ill.1991) (same).

#### b. *Effect of FAA's Inapplicability on Enforceability of Arbitration Clause*

Although the Second Circuit has not squarely addressed the issue presented in this case, other courts have enforced arbitration provisions against claims arising from FAA-excluded contracts if such provisions were enforceable under state law. *See O'Dean v. Tropicana Cruises Int'l, Inc.,* No. 98 Civ. 4543(JSR), 1999 WL 335381, at \*1 (S.D.N.Y. May 25, 1999)("the inapplicability of the FAA does not mean ... that arbitration provisions in seaman's employment contracts are unenforceable, but only that the particular enforcement mechanisms of the FAA are not available"); *U.S. ex rel. Mikes,* 897 F.Supp. 805, 807 (S.D.N.Y.1995) (enforcing arbitration agreement regardless of FAA exemption); *see also Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 200–01, 205, 76 S.Ct. 273, 100 L.Ed. 199 (1956) (upholding application of state arbitration law to interpretation of arbitration provision in FAA-exempt contract); *Central States, Southeast & Southwest Areas Pension Fund v. Tank Transp., Inc.,* 779 F.Supp. 947, 950 n. 3 (N.D.Ill.1991) ("[T]he fact that the FAA is not immediately applicable to the issues in the instant case does not eliminate arbitration as an acceptable dispute resolution mechanism, nor does it evidence a pre-

sumption of non-arbitrability."); *cf. Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford University,* 489 U.S. 468, 477, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (holding that FAA does not occupy entire field of arbitration). The effect of the FAA's inapplicability, pursuant to Section 1, is "merely to leave the arbitrability of disputes in the excluded categories as if the [FAA] had never been enacted." *Mason–Dixon Lines, Inc. v. Local Union No. 560,* 443 F.2d 807, 809 (3d Cir.1971); *see also Cole v. Burns Int'l Security Servs.,* 105 F.3d 1465, 1472 (D.C.Cir.1997) (stating in dicta that, even if FAA was inapplicable, right to enforce employment contract would remain intact); *Shearson,* 493 F.Supp. at 106 (stating that state arbitration law applies in absence of FAA coverage).

While guidance is sparse regarding the reasons for enforcing contracts not covered by the FAA, both the statute's plain language and case law interpreting the Section 1 exceptions comport with this result. Section 1 states that "nothing herein contained shall apply" to certain categories of employment contracts. 9 U.S.C. § 1. Cases interpreting Section 1 characterize the exceptions contained therein as articulating exclusions from the FAA as a whole. *See Circuit City,* 532 U.S. at 118, 121 S.Ct. 1302; *Erving,* 468 F.2d at 1069; *Arakawa,* 56 F.Supp.2d at 353; *Jamaica Buses,* 2003 WL 1621026, at *3. Section 1 does not, however, in any way address the enforceability of employment contracts exempt from the FAA. It simply excludes these contracts from FAA coverage entirely.

Plaintiff principally relies on an Eastern District of Pennsylvania case in support of her position that the FAA's exclusion of her employment contract renders the arbitration agreement contained therein unenforceable. *See Palcko v. Airborne Express, Inc.,* No. 02–2990, 2003 WL 21077048 (E.D.Pa. Apr. 23, 2003). The court in *Palcko* refused to compel arbitration of a transportation worker's Title VII and state human rights law claims under state law, deeming enforcement pursuant to state law improperly in conflict with Congress's purposes in excluding transportation workers from the FAA's reach. *Id.* at *4.

I conclude the weight of authority to the contrary is more persuasive. The conclusion urged by *Palcko* is untenable—that arbitration provisions in employment contracts exempt from the FAA, *i.e.,* transportation workers' employment contracts, are entirely unenforceable even where state law provides otherwise. This conclusion flouts the principle that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also Desiderio v. Nat'l Ass'n of Securities Dealers, Inc.,* 191 F.3d 198, 204 (2d Cir.1999). Moreover, it departs from clear authority upholding the arbitrability of Title VII and New York Human Rights Law claims. *Desiderio,* 191 F.3d at 206 (enforcing arbitration clause regarding Title VII claims); *Schuetz v. CS First Boston Corp.,* No. 96 Civ. 5557(DC), 1997 WL 452392, at *4 (S.D.N.Y. Aug. 8, 1997) (holding that Title VII and NYHRL claims are arbitrable); *Fletcher v. Kidder, Peabody & Co.,* 81 N.Y.2d 623, 601 N.Y.S.2d 686, 693–94, 619 N.E.2d 998 (1993) (deeming NYHRL claims arbitrable). And most importantly, it essentially re-writes what is merely an exemption providing that the FAA does not apply into a substantive pronouncement that such clauses in transportation workers' contracts are unenforceable.

■ Hence, the issue becomes what state law applies in this case. Here, both parties rely on New York law; in fact,

neither party suggests the applicability of any other state's law. Moreover, New York is connected to this action, as both employment applications containing the arbitration clause at issue were executed in New York and any relevant circumstances surrounding contract formation occurred in New York. Therefore, in light of the parties' reliance on New York law and that state's interest in this litigation, I conclude that New York law governs. *See Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir.1984) ("in the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied").

## B. *Application*

■ Generally, under New York law, courts may look to the following questions to determine a motion to compel arbitration: "(1) whether the parties made a valid agreement to arbitrate; (2) if so, whether the agreement has been complied with; and (3) whether the claim sought to be arbitrated would be time-barred if it were asserted in State court." *Smith Barney, Harris Upham & Co. v. Luckie*, 85 N.Y.2d 193, 623 N.Y.S.2d 800, 805, 647 N.E.2d 1308 (1995).[2]

Plaintiff makes four additional arguments in opposition to defendant's motion to dismiss or, alternatively, to stay the action and compel arbitration. First, plaintiff argues that the arbitration clause is not a contract. Second, plaintiff contends that she did not knowingly and intentionally waive her right to a jury trial. Third, plaintiff maintains that the arbitral forum is inadequate. Fourth, plaintiff argues that the expense of arbitration would be too costly for her to bear. I address each of these arguments in turn.

**2.** As the second two factors are undisputed, I focus on the first one in this Memorandum

## 1. *Validity of Arbitration Agreement*

Plaintiff attacks the validity of the arbitration provision on the grounds that (1) it does not state a clear and definite offer understood by plaintiff; and (2) defendant failed to accept plaintiff's offer manifest in the provision. Plaintiff's arguments lack merit.

■ Anticipatory or pre-dispute arbitrate agreements, such as that in this case, have repeatedly been enforced to compel arbitration of employment discrimination claims under not just Title VII but also the NYHRL. *See Desiderio*, 191 F.3d at 206; *Fletcher*, 601 N.Y.S.2d at 693–94; *South Huntington Jewish Ctr., Inc. v. Heyman*, 282 A.D.2d 684, 723 N.Y.S.2d 511, 512 (2d Dep't 2001); *Matter of Ball (SFX Broadcasting, Inc.)*, 236 A.D.2d 158, 665 N.Y.S.2d 444, 447 (3d Dep't 1997). Morever, "[i]t is firmly established that the public policy of New York State favors and encourages arbitration and alternative dispute resolutions.... Thus '[i]t has long been the policy of the law to interfere as little as possible with the freedom of consenting parties to achieve that objective.'" *Westinghouse Elec. Corp. v. New York City Transit Auth.*, 82 N.Y.2d 47, 603 N.Y.S.2d 404, 407, 623 N.E.2d 531 (1993). Accordingly, the arbitration clause executed by plaintiff is valid and requires arbitration of her Title VII and NYHRL employment discrimination claims.

Plaintiff's arguments to the contrary are unpersuasive. Plaintiff contends that the arbitration clause is not a contract because the copies of the employment applications in dispute attached to defendant's motion papers are "chopped off" and not "clear and definite." (Pl.Mem.4–5). Assuming, arguendo, that this were a valid basis for

Decision.

deciding defendant's motion, plaintiff's objection is misplaced, as defendant has subsequently supplied to plaintiff and the Court complete copies of the employment applications signed by plaintiff. Morever, as it is undisputed that plaintiff signed both employment applications containing the arbitration clause, plaintiff is presumed to have understood its contents. *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 537 N.Y.S.2d 787, 792, 534 N.E.2d 824 (1988) (citing *Metzger v. Aetna Ins. Co.*, 227 N.Y. 411, 416, 125 N.E. 814 (1920)).[3]

██ Plaintiff additionally argues that defendant did not properly "accept" plaintiff's "offer" of arbitration. (Pl.Mem.5–9). To the contrary, defendant had no obligation to "accept," as it was *plaintiff* who accepted *defendant's* offer to hire her in exchange for her promise to arbitrate. *See Moorning–Brown v. Bear, Stearns & Co., Inc.*, No. 99 Civ. 4130(JSR)(HBP), 1999 WL 1063233, at *4 (S.D.N.Y. Nov. 23, 1999) ("plaintiff's promise to arbitrate is supported by [defendant's] offer of employment to plaintiff and its continued employment of plaintiff").

██ Moreover, defendant had no obligation to sign the employment application to make the arbitration provision enforceable. *See Mahant v. Lehman Bros.*, No. 99 Civ. 4421(MBM), 2000 WL 1738399, at *2, 3 (S.D.N.Y. Nov. 22, 2000) (enforcing arbitration agreement contained in employment application signed only by employee); *Ahing v. Lehman Bros.*, No. 94 Civ. 9027(CSH), 2000 WL 460443, at *1 (S.D.N.Y. Apr. 20, 2000) (same); *Beletsis v. Credit Suisse First Boston Corp.*, No. 01 Civ. 6266(RCC), 2002 WL 2031610, 2002 U.S. Dist. LEXIS 16586, at *8 (S.D.N.Y. Sept. 4, 2002) (enforcing arbitration clause contained in employee handbook and pursuant acknowledgement signed by employee).

### 2. *Waiver of Right to Jury*

Plaintiff further objects to arbitration on the ground that she did not knowingly and intentionally waive her right to a jury trial. (Pl.Mem.9–11). Plaintiff's argument lacks merit.

██ By entering into the arbitration agreement, plaintiff is deemed to have waived the right to the jury trial. *See In re Currency Conversion Fee Antitrust Litigation*, 265 F.Supp.2d 385, 414 (S.D.N.Y. 2003); *Karlan & Bleicher, Inc. v. Ray*, No. 78 Civ. 3407(WCC), 1978 U.S. Dist. LEXIS 7093, at *8 n. 1 (S.D.N.Y. Dec. 23, 1978); *Kabia v. Koch*, 186 Misc.2d 363, 713 N.Y.S.2d 250, 254 (2000) (quoting *Berkovitz v. Arbib & Houlberg, Inc.*, 230 N.Y. 261, 130 N.E. 288 (1921)); *American Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 711 (5th Cir.2002), *cert. denied*, 537 U.S. 1106, 123 S.Ct. 871, 154 L.Ed.2d 775 (2003); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638 (4th Cir.), *cert. denied*, 537 U.S. 1087, 123 S.Ct. 695, 154 L.Ed.2d 631 (2002). An express jury trial waiver is unnecessary for the arbitration agreement to be enforceable. *See Diaz v. Josephthal, Lyon & Ross, Inc.*, No. 97 Civ. 4802(JSM)(LB), 1998 U.S. Dist. LEXIS 22204, at *11 (S.D.N.Y. Aug. 26, 1998); *Brener v. Becker Paribas, Inc.*, 628 F.Supp. 442, 446 n. 3 (S.D.N.Y.1985).

██ Moreover, under New York law, in the absence of fraud or other wrongful conduct, a party who signs a written contract is conclusively presumed to know its contents and to assent to them, and he is therefore bound by its terms and conditions. *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir.1993) (citing *Level Export Corp. v. Wolz, Aiken & Co.*, 305

---

**3.** Plaintiff does not contend that she received truncated or otherwise incomplete copies of the application at the time of signature. In fact, she states that she is not certain of whether the copies were "readable and complete." (Pl. Mem. 4 n. 4).

N.Y. 82, 87, 111 N.E.2d 218 (1953)). Because she has failed to allege fraud or otherwise wrongful conduct, plaintiff is presumed to have known and assented to the contents of the arbitration agreement.

The cases upon which plaintiff principally relies are unavailing. Plaintiff relies on *Brown v. Cushman & Wakefield, Inc.*, 235 F.Supp.2d 291 (S.D.N.Y.2002), for the proposition that arbitration agreements must contain conspicuous waivers to be enforceable. The case, however, does not pertain to an arbitration agreement but relates specifically to the enforceability of an express jury trial waiver. *Id.* at 294.

Moreover, plaintiff relies on *World Wide Communications, Inc. v. Rozar*, No. 96 Civ. 1056(MBM)(NRB), 1998 WL 386413 (S.D.N.Y. July 10, 1998), for the proposition that waiver of an Article III judicial forum does not implicitly waive the right to a jury. The case, however, is distinguishable from the instant one as the plaintiff in *Rozar* sought to enforce an arbitration agreement after waiving its right to compel arbitration.

In sum, plaintiff's argument that she did not waive her right to a jury trial fails.

### 3. *Arbitral Forum as Inadequate*

Plaintiff further objects to enforcing the arbitration agreement on the ground that an arbitral forum would be inadequate compared to a judicial one. (Pl.Mem.11–15). Plaintiff principally argues that arbitration will deprive her of the ability to compel the testimony of non-party witnesses located out of state. Plaintiff further argues that the arbitration agreement is unconscionable, as she had no meaningful choice but to sign the arbitration agreement and the agreement unreasonably favors defendant. I am not persuaded by either of plaintiff's arguments.

#### a. *Ability to Compel Witnesses*

First, while plaintiff elsewhere argues in her opposition papers that the FAA does not apply, she appears to argue in the alternative that, assuming the FAA does apply, it does not provide adequate subpoena enforcement protection.[4] Plaintiff's argument is moot, however, given the FAA's inapplicability to this case. *See* Discussion, Section A(1), *supra.*

As the FAA does not apply, arbitration in this case would be governed by the Rules of the American Arbitration Association, as indicated in the contract, and New York law. Both provide sufficiently for the issuance of subpoenas. Section 24 of the AAA Rules states that "[a]n arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently." (Getman Decl., Exh. B ¶ 24). The C.P.L.R. provides that "[a]n arbitrator and any attorney of record in the arbitration proceeding has the power to issue subpoenas." N.Y. C.P.L.R. § 7505. In addition, a foreign corporation that conducts business in New York and its officers and employees who have knowledge of the activity in question are subject to subpoenas issued under C.P.L.R. § 7505, regardless of where they reside. *See Standard Fruit & Steamship Co. v. Waterfront Comm'n of New York Harbor*, 43 N.Y.2d 11, 400 N.Y.S.2d 732, 734, 371 N.E.2d 453 (1977). As defendant does business in New York (Compl.¶ 5), the arbitrator or plaintiff's attorney would likely be empowered to compel the appearance of the out-of-state witnesses with knowledge of the events in question.

#### b. *Unconscionability*

Plaintiff also contends that an arbitral forum would be inadequate because the

---

**4.** Plaintiff contradicts her position that the FAA does not apply because she is a transportation worker exempt from the FAA. (Pl. Mem.1–3).

arbitration agreement is unconscionable. She argues that she had no meaningful choice but to sign the agreement and that it unreasonably favors defendant. I do not find the agreement to be unconscionable.

■■■■ An unconscionable contract is "one which is so grossly unreasonable . . . in the light of the mores and business practices of the time and place as to be unenforceable [sic] according to its literal terms." *Gillman*, 537 N.Y.S.2d at 791, 534 N.E.2d 824. Specifically, a contract is unconscionable in the "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id.* The former has been treated as the "procedural" element, while the latter has been deemed "substantive." *See, e.g., id.*

### i. *Procedural Unconscionability*

■■■ Procedural unconscionability involves factors such as the use of high pressure or deceptive tactics, fine print in the contract, and any disparity in experience and education between the parties. *Id.*

Plaintiff alleges that the arbitration clause is procedurally unconscionable, as she lacked a "meaningful choice" because the arbitration clause: (1) was pre-printed at the bottom of the application; (2) appeared in small print; (3) was "chopped off" and unreadable; (4) was "incomplete" because it did not mention waiver of jury rights; (5) contained "legalistic phrases"; and (6) lacked mutuality.

■■■ Plaintiff's allegations fail to support a finding of unconscionability. The arbitration clause's pre-printed appearance at the bottom of the page does not automatically render the clause unconscionable, especially in light of the fact that the clause appears in a section directly above the signature line. *See Gillman*, 537 N.Y.S.2d at 792, 534 N.E.2d 824 (enforcing

agreement in which disputed language appeared in bold-face fine print appearing directly above signature line) (citing *Equitable Lumber Corp. v. IPA Land Dev. Corp.*, 38 N.Y.2d 516, 381 N.Y.S.2d 459, 461 n. 2, 344 N.E.2d 391 (1976) (accepting as proper language appearing on back of contract above signature line)). Plaintiff's objection to the print size in which the arbitration clause appears is also misplaced, as it is consistent with the rest of the document. In addition, plaintiff's objection to the use of "legalistic" phrases is unpersuasive, as similar clauses have been upheld in New York. *See, e.g., Crawford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 35 N.Y.2d 291, 361 N.Y.S.2d 140, 144, 319 N.E.2d 408 (1974). Lastly, plaintiff's arguments regarding the arbitration clause being "chopped off," "incomplete," and lacking mutuality are invalid, as addressed above. *See* Discussion, Section B(1), *supra.*

*Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 382–83 (S.D.N.Y.2002), cited by plaintiff, is distinguishable, as it involved the use of "high pressure tactics" by the employer and unequal bargaining power resulting from the employee's fear of losing her job. In this case, plaintiff fails to allege any coercive tactics. In fact, that plaintiff submitted two copies of the employment application suggests greater deliberation by plaintiff than existed in *Brennan*, where the employee was given only fifteen minutes to sign the agreement in dispute. *Id.* at 383. Moreover, to the extent that the coercion in *Brennan* arose from the employee's fear of losing her job, plaintiff in this case was not similarly situated, as she had not yet been hired.

### ii. *Substantive Unconscionability*

■■■ Substantive unconscionability appears "in the context of the contract per se." *Matter of Friedman*, 64 A.D.2d 70,

407 N.Y.S.2d 999, 1008 (2d Dep't 1978). It "entails an analysis of the substance of the bargain to determine whether the terms [are] unreasonably favorable to the party against whom unconscionability is urged." *Gillman,* 537 N.Y.S.2d at 792, 534 N.E.2d 824.

Plaintiff maintains that the arbitration clause was substantively unconscionable because it: (1) denied plaintiff the ability to obtain testimony from witnesses out of the arbitrator's jurisdictional reach; and (2) defendant would be able to direct whichever of its employees it would like to testify. Plaintiff's first argument is invalid for reasons discussed previously. *See* Discussion, Section B(3)(a), *supra.* Plaintiff's second argument is equally unpersuasive, as it assumes, without support, that defendant would somehow prevail upon its employees to ignore judicially enforceable subpoenas ordering their appearance.

*Brennan,* 198 F.Supp.2d 377, is also distinguishable as to the issue of substantive unconscionability, as the contract in that case allowed the defendant to modify the contract unilaterally at any time and denied the plaintiff the right to proceed in court on a pending sexual harassment claim she had against the company. *Id.* at 384. Any benefit to defendant arising from the arbitration clause's terms in this case falls far short of that rendered to the defendant in *Brennan.*

#### 4. *Costs of Arbitration*

Lastly, plaintiff argues that arbitration would be inappropriate in this case because the associated costs would be unduly burdensome for her. I am not unsympathetic to the argument, for often arbitration fees are exorbitant. Nonetheless, the argument is rejected, for the law is well-settled in this respect.

 The mere assertion that the costs associated with arbitration would be excessive does not alone render an arbitration agreement unenforceable. *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Plaintiff bears the burden of showing the "likelihood of incurring such costs." *Id.* at 91, 121 S.Ct. 513.

 Plaintiff has failed to meet this burden. While she goes to great lengths to detail her financial status and resulting inability to pay the administrative costs required under the AAA Rules (Getman Decl., Ex. B), plaintiff fails to establish the likelihood that she will have to pay these fees. Her claims are especially speculative in light of Section 38 of the AAA Rules, which provides for administrative fees to be "defer[red] or reduce[d]" in the event of "extreme hardship." (Getman Decl., Exh. B, § 38). *See Coty Inc. v. Anchor Constr., Inc.,* No. 601499–02, 2003 WL 139551, at *10 (N.Y.Sup.Ct. Jan. 8, 2003) ("Financial hardship adjustments and allocation adjustments in the final award commonly occur in arbitration proceedings."); *Boyd v. Town of Hayneville,* 144 F.Supp.2d 1272, 1280 (M.D.Ala.2001) (enforcing arbitration agreement despite plaintiff's claim of financial burden in light of AAA hardship provision).

### CONCLUSION

For the reasons set forth above, defendant's motion to dismiss is granted. This action is dismissed, without prejudice to reinstatement in the event further proceedings are necessary following the arbitration. The Clerk of the Court shall enter judgment accordingly and this case shall be closed.

SO ORDERED.